FILED OH S BANKRUPTCY
JUN 24 2025 PH 3:38



**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF OHIO**

**WESTERN DIVISION AT CINCINNATI**

In re:
Chastity Ellison, Debtor

Case No. 1:25-bk-10859
Chapter 13
**objection to Claim 9-1**

### I. Introduction

Debtor, Chastity Ellison, respectfully files this objection to Proof of Claim 9-1, filed by attorney Jacqueline Sawyers on behalf of Wayne Ellison. This claim combines multiple disputed amounts into a single lump sum, including a QDRO-related repayment, a Jeep tax obligation, and interest. It is based on an interlocutory order, relies on procedural rules not meant for substantive changes, and omits other related financial issues that further undermine the enforceability of the alleged debt. The claim must be disallowed under 11 U.S.C. § 502(b)(1) because it is not a valid or enforceable debt under nonbankruptcy law.

### II. Improper Use of CR 60.01 and CR 60.02

The repayment claim is based on a motion to revise the QDRO (Exhibit A) that improperly relied on CR 60.01 and CR 60.02. CR 60.01 is limited to clerical mistakes and cannot be used to revise an order based on an omitted legal calculation. CR 60.02 requires extraordinary circumstances such as fraud, mistake, or newly discovered evidence—none of which were alleged or proven. The motion itself acknowledged that tracing had not been completed, yet sought to retroactively change the QDRO. The resulting state court order (Exhibit H) confirmed that no expert tracing had been performed and that the QDRO was inconsistent with the separation agreement. Despite this, the revised order was used to seek repayment and contempt enforcement based on unverified and speculative amounts. This misuse of procedural rules created a financial obligation that is not valid under applicable nonbankruptcy law and must be disallowed under 11 U.S.C. § 502(b)(1).

### III. Lumped Claims and Legal Defects

Claim 9-1 was submitted as a single proof of claim totaling $124,811.71 but combines multiple distinct obligations—each with different legal bases and procedural statuses. Although the claimant attached a document purporting to "itemize" the components of the claim, the actual proof of claim form combines these figures into a single total. This is misleading and contrary to the purpose of

Fed. R. Bankr. P. 3001(c), which requires creditors to provide sufficient clarity and
documentation to allow meaningful review by the trustee and debtor.

Some of the alleged debts listed in the itemization  total amount conflicts with IRS
Form 1099-R and other evidence. The tracing fee ordered on July 25, 2023, is
conspicuously missing from the claim. If the creditor intended to recover on
multiple obligations, she was required to file separate claims—or, at minimum,
clearly show that they arise from a valid, enforceable judgment under
nonbankruptcy law.

As explained in *In re Cluff, 313 B.R. 323, 336 (Bankr. D. Utah 2004)*, and *In re Heath, 331
B.R. 424, 435 (B.A.P. 9th Cir. 2005)*, a claim that combines multiple obligations without
proper legal or procedural support, or that fails to distinguish final versus
interlocutory orders, cannot be allowed under § 502(b)(1).

## IV. QDRO Repayment and Interlocutory Nature
The QDRO underlying the repayment claim was entered without completed tracing, in direct
contradiction to the intent of the parties and the Separation Agreement. The state court
later revised the QDRO using CR 60.01 and 60.02, despite no clerical error or extraordinary
circumstances. These procedural rules were misapplied to retroactively fix a legal error,
creating a disputed financial obligation that cannot be enforced under 11 U.S.C. § 502(b)(1).
The Kentucky Court of Appeals confirmed the order was interlocutory. (Exhibit B)

Emails between counsel confirm that tracing was discussed but never completed.
Eileen Zell had been retained to perform the tracing, but Wayne Ellison failed to
pay his share of the fee despite months of attempts to obtain his cooperation. As a
result, no calculation was performed before the QDRO was submitted by counsel
for both parties (Exhibit C)

## V. Jeep Tax Invalidity
The Jeep tax claim is not valid under Kentucky law. KRS 134.810 and Department of
Revenue guidance make clear that ad valorem taxes follow vehicle ownership as of January
1. Wayne Ellison owned the vehicle on January 1, 2022. The Separation Agreement signed
afterward assigns each party responsibility for debts in their own name.  Despite this,
contempt motions were filed and an obligation was improperly imposed.

Excerpt  from page 2 of the separation agreement

"Wife shall retain her vehicle a 2015 Jeep Wrangler. There is currently a lien on this vehicle
and Husband agrees that he will pay off the current debt and then this vehicle shall be
transferred into Wife's name alone. Until the transfer Husband shall be responsible for all

lien payments, taxes and insurance on the vehicle. After the lien has been paid and the vehicle transferred to Wife she shall be responsible for payment of all taxes and insurance on that vehicle and shall hold husband harmless thereon." (Exhibit D)

## VI. Tracing Fee Omitted

Although the July 25, 2023, family court order assigned each party half the cost of Charles Meers' tracing work, the creditor omitted this cost from the claim. No separate claim has been filed for the $500 tracing fee, and it is unclear if this amount has been waived. However, its omission, while lesser debts are included, further calls the claim's integrity into question.

## VII. Escrow and Misrepresented Amounts

The claim lists $124,811.71 but acknowledges that $79,759.78 is already held in escrow. The itemization provided by the creditor confirms this and states a lower balance due, excluding that amount. Despite this, $124,811.71 is claimed. Further, the IRS 1099-R for the QDRO distribution contradicts the numbers in the 'chart' provided, showing a gross distribution of $160,930.30 with $32,175.13 withheld for taxes. These figures must be reconciled. (Exhibit E)

## VIII. Use of Funds and Financial Harm

The funds were used for legal fees and essential living expenses before the freeze order. Debtor had made efforts to secure housing and pay off accumulated debt caused by delays and legal errors. $79,758.78 remained at the time of the freeze and is currently held in escrow. (Exhibit F)

## IX. Relief Requested

Debtor respectfully requests that this Court disallow Claim 9-1 under 11 U.S.C. § 502(b)(1) on the grounds that it is based on a procedurally defective, unfinalized state court order, improperly includes unenforceable tax and legal fee amounts, and misrepresents escrowed and disbursed funds.

## X. Legal Authority

- Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 58–59 (1989): Bankruptcy courts determine claims validity.
- In re Gibson, 142 B.R. 879, 880 (Bankr. E.D. Mo. 1992): Interlocutory state court orders are not binding.
- In re Stoecker, 5 F.3d 1022 (7th Cir. 1993): Misuse of procedural shortcuts invalidates substantive claims.

Respectfully submitted,

Chastity Ellen

Chastity Ellison

Debtor, Pro Se

945 Delaware Way, Apt. #5213

Cincinnati, OH 45245

(513) 300-8722

chasity.hitch@gmail.com

Dated: June 24, 2025

**Exhibits**

Exhibit A – State court freeze motion using CR 60.01/60.02 (text only, excluding exhibits for clarity but may be submitted upon request)

Exhibit B - Court of Appeals Order and Opinion stating family court order is interlocutory

Exhibit C – Emails and timeline confirming tracing was not completed

Exhibit D - (1) Separation Agreement, (2) Property Tax Bill, (3)Backdated and Improper Vehicle Transfer Document Signed 2020, Notarized two years later, (4) Actual Legal Transfer, (5) Ohio title

Exhibit E – IRS Form 1099-R showing gross amount and tax withholding  and Undated chart used in court to support claim

Exhibit F – Declaration of Chastity Ellison

Exhibit G – State Court Freeze Order using CR 60.01/60.02

Exhibit H – State Court Interlocutory Order

The debtor reserves the right to supplement these exhibits or provide full versions of any attached filings upon request by the Court or Trustee.

**COMMONWEALTH OF KENTUCKY**
**KENTON CIRCUIT COURT**
**FAMILY DIVISION II**
**CASE NO.: 21-CI-01554**

*(Before the Honorable Judge Terri King Schoborg)*

**WAYNE ELLISON**                                              **PETITIONER**

v.                              [***Electronically Filed***]

**CHASTITY ELLISON**                                              **RESPONDENT**

---

### *PETITIONER'S EMERGENCY MOTION*
### *TO FREEZE NON-MARITAL ASSETS TRANSFERRED*
### *PURSUANT TO QUALIFIED DOMESTIC RELATIONS*
### *ORDER ENTERED ON JANUARY 11, 2023, AND*
### *MOTION TO SET ASIDE AND MODIFY*
### *QUALIFIED DOMESTIC RELATIONS ORDER*
### *TO BE CONSISTENT WITH THE PARTIES' INTENTIONS*
### *AS STATED IN THEIR SEPARATION AGREEMENT*

---

Comes now the Petitioner/Husband, WAYNE ELLISON, by and through his undersigned

counsel, and pursuant to the provisions of Rule 60.02 of the Kentucky Rules of Civil Procedure,

respectfully moves the Court for the entry of an Order as follows:

1. Entry of an Order on an emergency basis freezing the assets transferred to the

   Respondent/Wife pursuant to the Qualified Domestic Relations Order entered on

   January 11, 2023, until an evidentiary hearing on this issue can be held before the

   Court, or until this Court has otherwise addressed this issue; and

2. Entry of an Order modifying and revising the Qualified Domestic Relations Order

   which was entered by this Court on January 11, 2023, which inappropriately divided

   apportioned non-marital funds from the Petitioner/Husband's 401K to the

   Respondent/Wife.



EXHIBIT

A

The Petitioner/Husband is filing this Motion on an emergency basis as he has grave concerns that the Respondent/Wife will dispose of the assets she received from the division of the Petitioner/Husband's 401K account before this Court has the opportunity to address this issue. The Respondent/Wife has asked the Plan Administrator to transfer all of the sums apportioned to her out of the 401K plan and into her individual name.

As grounds for this Motion, the Petitioner/Husband submits the following Memorandum, and the Affidavits of the Petitioner/Husband, Wayne Ellison, and his former counsel of record, Donald L. Nageleisen, Esq., which are attached hereto respectively as Exhibits 1 and 2.

## MEMORANDUM

### Factual and Procedural History

By way of background, the parties were only married for a brief period of approximately three (3) years from March 29, 2019, until their marriage was dissolved in this dissolution of marriage proceeding on April 15, 2022. At the time of the parties' marriage, the Petitioner/Husband had accumulated significant vested holdings in his 401K account through his employment with Fifth Third Bank. The value of the Petitioner/Husband's 401K as of March 1, 2019,--twenty-eight (28) days prior to the parties' marriage was $738,117.64. Those sums are clearly the Petitioner/Husband's non-marital property pursuant to the provisions of K.R.S. 403.190, and any increase or appreciation in the value of those non-marital sums are also the Petitioner/Husband's non-marital property pursuant to the provisions of K.R.S. 403.190.

The Petitioner/Husband continued to contribute to his 401K during the course of the parties' marriage, and his employer additionally made matching contributions up to a certain percentage. Those contributions by the Petitioner/Husband and his employer to his 401K during the course of the parties' marriage are marital property which are subject to division between the

7A3E5255-B0E1-4DBE-8221-2E95A4B8EB8F : 000002 of 000054

7A3E5255-B0E1-4DBE-8221-2E95A4B8EB8F : 000003 of 000054

Petitioner/Husband and the Respondent/Wife in this proceeding pursuant to the provisions of K.R.S. 403.190.

The Petitioner/Husband contributed the sum of $51,497.22 to his 401K from his earnings during the course of the parties' three (3) year marriage, and his employer contributed an additional $11,850.72 to the Petitioner/Husband's 401K during the course of the parties' marriage. As such, the total marital contributions to the Petitioner/Husband's 401K during the course of the parties' marriage was $63,347.94. The marital portion of the Petitioner/Husband's 401K which should have been divided between the parties was, therefore, the sum of $63,347.94, plus any increase or appreciation in the value of those marital contributions during the course of the parties' marriage pursuant to the provisions of K.R.S. 403.190.

During the course of the parties' negotiations with one another, including during the mediation conducted with the Honorable Mark A. Ogle, it was always clear that only the "marital" portion of the Petitioner/Husband's 401K would be subject to division with the Respondent/Wife as marital property. Following their mediation with the Honorable Mark A. Ogle, the parties entered into and executed a Separation Agreement which provided the following:

> The Husband has a 401K with Fifth Third Bank in his name. Husband agrees that he has not removed any funds from this account during the marriage. Any loans that may have been taken against that account will be the Husband's responsibility and shall not be taken from the Wife's *marital* portion. The *marital* portion of this account shall be divided via QDRO. ***The parties agree that the marital portion shall be divided equally between the parties, plus or minus any investment gains or losses***. ***The marital portion shall be defined as the benefit accrued from the date of the marriage through the date of divorce.*** The parties agree that they will retain Eileen Zell to prepare the QDRO for the division of this account and each shall be responsible for 50% of the cost of division of the account and the fees to Eileen Zell. (Emphasis added)

3

7A3E5255-B0E1-4DBE-8221-2E95A4B8EB8F : 000004 of 000054

It is abundantly clear from the above-quoted language of the parties' Separation Agreement that it was the intention of the parties that only the portion of the Petitioner/Husband's 401K which accrued and accumulated during the course of the parties' marriage, plus or minus any investment gains or losses on those marital contributions, was to be divided between the parties as marital property.  Likewise, the remainder of the Petitioner/Husband's 401K account balance, including any investment gains or losses on those non-marital funds, were to be the non-marital property of the Petitioner/Husband.

That conclusion is supported by the e-mail exchanges between the Respondent/Wife's counsel and Ms. Zell, whom the parties agreed would be retained to prepare the QDRO.  Those e-mail communications make it crystal clear that only the "marital" portion of the Petitioner/Husband's 401K account was going to be subject to division between the parties.  The Respondent/Wife's counsel stated the following in an e-mail to Ms. Zell's paralegal, Jordan Neff, on June 22, 2022:

> *__50% of the marital portion is what we agreed to__*.  I'm not sure exactly what you mean by assignment.  But, *__the parties agreed that the wife would get half of the marital portion only__*. (Emphasis added)

In a subsequent e-mail to the Petitioner/Husband's then counsel of record, dated June 23, 2022, the Respondent/Wife's counsel stated the following:

> Apparently Eileen needs to do a calculation to account for *__the separation of the increase in value of the nonmarital portion and the creation of the marital portion__*. (Emphasis added)

In an e-mail from Ms. Zell's paralegal, Jordan Neff, on September 2, 2022, Ms. Zell's paralegal made the following statement:

7A3E5255-B0E1-4DBE-8221-2E95A4B8EB8F : 000005 of 000054

> ***In this case, the parties agreed to a 50% assignment from the***
> ***"marital portion" of the participant's account.  The marriage***
> ***was relatively brief, and the pre-marital interest we understand***
> ***should be excluded from assignment substantial.*** Based on this,
> our office discussed the potential need of an account trace to
> calculate the award with Attorney Oldfield (this isn't a pension
> with a formula that supports "marital" assignments; the award
> needs to be calculated, and we are/were just waiting the go-ahead
> to proceed. (Emphasis added)

There is no doubt from the express statements made in the above-quoted e-mail exchanges that it

was the intention of the parties, including the Respondent/Wife and her counsel, that only the

"marital" portion of the Petitioner/Husband's 401K account was subject to division, including

any increase in the value of those marital contributions during the course of the parties' marriage.

Following the above-quoted e-mail communications between the Respondent/Wife's

counsel and Ms. Zell's paralegal, there was apparently a breakdown in communications between

then counsel for the Petitioner/Husband, Attorney Donald L. Nageleisen, counsel for the

Respondent/Wife, Attorney Laura A. Oldfield, and Ms. Zell regarding the fee to be charged for

the QDRO and any calculation needed to be completed by Ms. Zell to properly divide the marital

portion of the Petitioner/Husband's 401K.  The requisite fees for Ms. Zell to draft the QDRO and

calculate the marital portion of the Petitioner/Husband's 401K to be divided  were paid by the

Petitioner/Husband through his counsel to the Respondent/Wife's counsel.

Attorney Nageleisen could not get Ms. Zell to return his phone calls inquiring about her

fee and the status of the work she was to be performing.  Counsel for the Respondent/Wife

refused to answer Attorney Nageleisen's inquiries as well.  Ultimately, due to the lack of

cooperation, Attorney Nageleisen withdrew as counsel for the Petitioner/Husband in this case in

October, 2022. It is significant to note that when Attorney Nageleisen filed his Motion to

Withdraw as counsel, counsel for the Respondent/Wife made the unilateral decision to return the

fee the Petitioner/Husband had paid for Ms. Zell to calculate the value of the marital portion of the Petitioner/Husband's 401K to be divided.

The undersigned was retained to represent the Petitioner/Husband in November, 2022, in an effort to get the QDRO for the division of the marital portion of his 401K drafted and entered so that this matter could be finalized.     A Qualified Domestic Relations Order was finally tendered to the undersigned by counsel for the Respondent/Wife in late November/early December, 2022, and that Qualified Domestic Relations Order was signed by both parties and their counsel and was entered by the Court on January 11, 2023.     The entered Qualified Domestic Relations Order incorrectly stated the following:

The Alternate Payee shall be awarded an amount equal to:

(i)     50% of the difference between (a) Participant's vested Account under the Plan as of April 15, 2022, or closest permitted date thereto (hereinafter referred to as the "Determination Date"); and (b) Participant's vested Account under the Plan as of March 29, 2019, or closest permitted date thereto.

It is significant to note that the entered Qualified Domestic Relations Order was "prepared" by the Respondent/Wife's counsel, Attorney Laura A. Oldfield, and apparently not by Ms. Zell. The Petitioner/Husband mistakenly understood the language of the entered Qualified Domestic Relations Order to be consistent with the parties' Separation Agreement, all of the parties' settlement discussions and all of the post-decree discussions and e-mail communications between counsel and Ms. Zell following the dissolution of the parties' marriage.

The entered Qualified Domestic Relations Order with the above-quoted language was tendered to the Plan Administrator for Fifth Third Bank, and the division was effectuated on or about February 2, 2023.  It was  at that time that the Petitioner/Husband was shocked to discover the mistake in the language as stated in the entered Qualified Domestic Relations Order.

7A3E5255-B0E1-4DBE-8221-2E95A4B8EB8F : 000007 of 000054

As stated above, the Petitioner/Husband only contributed the sum of $63,347.94 to his 401K, including the matching contributions from his employer, during the course of the parties' marriage. As such, the Respondent/Wife was entitled to received fifty percent (50%) of the sum of $63,347.94 that "accrued" and accumulated during the course of the parties' marriage, plus or minus any investments earnings and losses on those martial contributions.   That is all the Respondent/Wife was entitled to receive pursuant to the terms of the parties' Separation Agreement, consistent with the provisions of K.R.S. 403.190.

However, the Respondent/Wife was mistakenly awarded the sum of $163,798.97 from the Petitioner/Husband's 401K account---that is over $100,000 more than the Petitioner/Husband even contributed to his 401K during the course of the parties' marriage.   According to that calculation, the Petitioner/Husband's marital contribution of $63,347.94 increased in value to the sum of $327,579.94 during the parties' brief three (3) year marriage. Certainly, the Petitioner/Husband's marital contributions of $63,347.94 did not increase in value by over $250,000 during the course of the parties' marriage!! Clearly, the Respondent/Wife should not be permitted to retain such a windfall due to a mistake and the inaccuracy of the language used in the entered Qualified Domestic Relations Order, which was prepared by the Respondent/Wife's counsel.

### The Manner in Which the Petitioner/Husband's 401K Was Divided Is Not Only Inconsistent with the Language of the Parties' Separation Agreement, But the Division Is Also In Direct Conflict with the Provisions of K.R.S. 403.190.

As the Court is aware, the provisions of K.R.S. 403.190 specifically delineate the criteria for determining what assets are marital property and what assets are non-marital property in a dissolution of marriage proceeding.   "Marital Property" is defined as follows in K.R.S. 403.190(2):

(2) For purposes of this chapter, *"marital property" means all property acquired by either spouse subsequent to the marriage except*:

(a)    Property acquired by gift, bequest, devise, or descent during the marriage and the income derived therefrom unless there are significant activities of either spouse which contributed to the increase in value of said property and the income earned therefrom;

(b)    Property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise or descent;

(c)    Property acquired by either spouse after a decree of legal separation;

(d)    Property excluded by valid agreement of the parties; and

(e)    *The increase in value of property acquired before the marriage to the extent that such increase did not result from the efforts of the parties' during the marriage*.  (Emphasis added)

Pursuant to the express language of K.R.S. 403.190(2)(e), it is clear that as a matter of law the increase in the value of the sums in the Petitioner/Husband's 401K account prior to the parties' marriage is the Petitioner/Husband's non-marital property, and no portion of that increase in value of the Petitioner/Husband's non-marital property should have been apportioned or awarded to the Respondent/Wife.

### The Provisions of CR 60.01 and 60.02 Permit This Court To Set Aside the QDRO Entered on January 11, 2023, And Modify Its Provisions to Comply with the Parties' Separation Agreement and the Express Provisions of K.R.S. 403.190.

The provisions of Rules 60.01 and 60.02 of the Kentucky Rules of Civil Procedure permit this Court to grant the Petitioner/Husband relief from the incorrect language used in the entered Qualified Domestic Relations Order and modify the language to provide what the parties clearly

8

intended would be the appropriate division of the marital portion of the Petitioner/Husband's

401K account.    Rule 60.01 of the Kentucky Rules of Civil Procedure provides as follows:

> *Clerical mistakes* in judgments, orders or other parts of the record
> and errors therein *arising from oversight or omission* may be
> corrected by the court at any time on its own initiative or on the
> motion of any party and after such notice, if any, as the court
> orders. (Emphasis added)

Rules 60.02 of the Kentucky Rules of Civil Procedure provides as follows:

> On motion a court may, *upon such terms as are just*, relieve a
> party or his legal representative from its final judgment, order or
> proceeding upon the following grounds: (a) *mistake*, *inadvertence*,
> surprise or *excusable neglect*; (b) newly discovered evidence
> which by due diligence could not have been discovered in time to
> move for a new trial under Rule 59.02; (c) perjury or falsified
> evidence; (d) *fraud* affecting the proceedings other than perjury or
> falsified evidence; (e) the judgment is void, or has been satisfied,
> released or discharged, or a prior judgment upon which it is based
> has been reversed or otherwise vacated, or it is no longer equitable
> that the judgment should have prospective application; or (f) *any
> other reason of an extraordinary nature justifying relief*.
> (Emphasis added)

The Petitioner/Husband submits that it is clear at a minimum there was a mistake in the drafting

of the language of the entered QDRO resulting in the Respondent/Wife receiving significantly

more funds from the Petitioner/Husband's 401K account than she was entitled to receive.

The undersigned counsel for the Petitioner/Husband was in hopes that counsel for the

Respondent/Wife would agree that the language in the QDRO as entered was a clerical mistake

in drafting so as to invoke the provisions of CR 60.01 to modify the entered Qualified Domestic

Relations Order by agreement.    However, when the undersigned contacted counsel for the

Respondent/Wife on February 7, 2023, to advise her of the obvious mistake in the division, the

undersigned was advised by counsel for the Respondent/Wife that the Respondent/Wife was

unwilling to acknowledge that there had been a mistake at all in the division, despite the

9

statements counsel for the Respondent/Wife had made in prior e-mail exchanges as quoted above, nor would the Respondent/Wife agree to refrain from spending any of the money inappropriately transferred to her account until this matter could be heard by the Court.

The Petitioner/Husband is, therefore, relying upon the provisions of CR 60.02 in support of this Motion to set aside the Qualified Domestic Relations Order which was entered on January 11, 2023, and is asking this Court to enter a revised Qualified Domestic Relations Order appropriately dividing the Petitioner/Husband's 401K account in accordance with the parties' intentions, their Separation Agreement, which was incorporated into their Decree of Dissolution, and the provisions of K.R.S. 403.190.   There was clearly at a minimum a mistake in the language of the entered Qualified Domestic Relations Order as drafted and entered, whether that mistake was inadvertent or intentional.   Not only is the language of the QDRO as drafted inconsistent with the language of the parties' Separation Agreement and the provisions of K.R.S. 403.190, it is also inconsistent with the express statements made in the e-mail exchanges between counsel for the Respondent/Wife and Ms. Zell, which are quoted above.   Certainly, the Petitioner/Husband has established reasons of an extraordinary nature justifying relief to warrant relief under CR 60.02(f).

**The Petitioner/Husband's Non-Marital Funds Which Were Inappropriately
Transferred to the Respondent/Wife Should Be Frozen to Insure Those Funds
Are Not Disposed of by the Respondent/Wife Until the Court Can Rule on This Issue.**

The Petitioner/Husband has been advised by the Plan Administrator for his 401K that his non-marital funds which have been inappropriately and inadvertently transferred to the Respondent/Wife can only be frozen with a Court Order.   As such, the Petitioner/Husband is asking this Court to enter such an Order on an emergency basis until the Court can address this issue on the merits.

10

7A3E5255-B0E1-4DBE-8221-2E95A4B8EB8F : 000011 of 000054

### Conclusion

To protect the Petitioner/Husband's interest in this matter, the Petitioner/Husband is asking this Court to immediately freeze the account of the Respondent/Wife on an emergency basis and restrain her spending or disposing of any of the sums transferred to her until this Court can rule on this issue on the merits.   Any result other than to set aside the entered QDRO and enter a QDRO which provides for the correct calculation and division of the marital portion of the Petitioner/Husband's 401K would be patently unfair to the Petitioner/Husband and would unjustly reward the Respondent/Wife for no reason and without any justification whatsoever.

Respectfully Submitted,

/s/ Jacqueline S. Sawyers
JACQUELINE S. SAWYERS
(KBA #: 82094)
2216 Dixie Highway, Suite 203
Fort Mitchell, Kentucky 41017
Phone: (859) 578-9555
E-Mail: jsawyers@jsawyerslaw.com
Counsel for Petitioner/Husband, Wayne Ellison

### NOTICE

Notice is hereby given that the Petitioner/Husband is seeking the entry of an Emergency Order as stated above, and notice is further given that the foregoing Motion will come on for hearing before the Honorable Judge Terri King Schoborg, of the Kenton Circuit Family Court, Division II, on *Tuesday, February 21, 2023, at 1:30 p.m,* or at such other time as established by the Court.

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion has been served on counsel for the Respondent/Wife, Laura A. Oldfield, Esq., via First Class U.S. Mail, postage pre-paid to 463 Commonwealth Avenue, Erlanger, Kentucky 41018, via e-mail to loldfield@laolaw.com and via the KCOJ e-filing portal on this 14th day of February, 2023.

/s/ Jacqueline S. Sawyers
JACQUELINE S. SAWYERS

11

## VERIFICATION

The undersigned, WAYNE ELLISON, state that I have read the foregoing Verified Motion and that all of the statements contained therein are true, accurate and correct to the best my knowledge and belief.

_____
**WAYNE ELLISON**

## NOTARY CERTIFICATE

COMMONWEALTH OF KENTUCKY
COUNTY OF KENTON

The foregoing was subscribed, sworn to and acknowledged before me this 14th day February, 2023, by WAYNE ELLISON, as his free and voluntary act and deed.

My Commission Expires:

_2/17/2025_

_____
**NOTARY PUBLIC**
Notary Identification #:  _KYNP 23813_

12

RENDERED: NOVEMBER 8, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

### NO. 2023-CA-1136-MR

CHASTITY ELLISON                                    APPELLANT


APPEAL FROM KENTON CIRCUIT COURT
FAMILY COURT DIVISION
v.          HONORABLE TERRI KING SCHOBORG, JUDGE
ACTION NO. 21-CI-01554


WAYNE ELLISON                                    APPELLEE


## OPINION AND ORDER
## DISMISSING

** ** ** ** **

BEFORE: ECKERLE, A. JONES, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Chastity Ellison appeals from a July 25, 2023, Order entered

by the Kenton Circuit Court, Family Court Division (family court), setting aside,

*nunc pro tunc*, a Qualified Domestic Relations Order (QDRO) entered by the



family court on January 11, 2023.[1] For the reasons stated, we dismiss this appeal as being interlocutory.

The marriage of Chastity and Wayne Ellison was dissolved by decree entered by the Kenton Family Court on April 15, 2022. The parties had been married for slightly more than three years. Under the Separation Agreement entered into by the parties, the marital interest of Wayne's 401K account would be divided equally pursuant to a QDRO that the parties would agree to tender to the court. The family court entered the QDRO on January 11, 2023. Wayne believed that the marital interest of the 401K account was $75,903.30, plus any investment earnings. However, the QDRO language apparently allowed a distribution to Chastity from Wayne's nonmarital funds. On February 3, 2023, the plan administrator distributed to Chastity the sum of approximately $164,000, substantially more than provided for under the terms of the Separation Agreement. Thereafter, Wayne filed on February 14, 2023, a Kentucky Rules of Civil Procedure (CR) 60.01 motion to set aside the QDRO and obtain reimbursement of the funds overpaid to Chastity from the 401K. Following an evidentiary hearing conducted on April 10, 2023, June 5, 2023, and June 26, 2023, the family court

---

[1] Counsel for Chastity Ellison filed a notice of bankruptcy with this Court on October 4, 2023. The bankruptcy was filed on September 25, 2023, three days before this appeal was filed. Based on our review, the automatic stay provisions of 11 United States Code § 362 do not apply to this case. Notwithstanding, the bankruptcy was dismissed by the United States Bankruptcy Court for the Southern District of Ohio on July 9, 2024.

concluded in its July 25, 2023, Order, that the QDRO did not clerically comport

with the Separation Agreement, resulting in a "windfall" payment to Chastity

under the QDRO.[2]

> In its July 25, 2023, Order, the family court held:

> It is the opinion of this Court that [Chastity] was unjustly
> enriched by the execution of the QDRO which the court
> declares void as to the parties. The Court concludes as a
> matter of law that a determination needs to be made as to
> the value of [Wayne's] non-marital interest in his 401K
> account, including the appreciation in the value of those
> funds. Such calculation should be performed by
> someone . . . with expertise in that area.

Order at 13.

> Due to that holding, the family court granted Wayne's motion to set

aside the QDRO and issued the following directives, in relevant part:

> 2. Within ten (10) days from the entry of this Order, the
> parties are directed to agree upon an expert to calculate
> the value of [Wayne's] non-marital interest in his 401K
> account and similarly the value of the marital interest in
> in [Wayne's] 401K account, including the appreciation in
> value for both [Wayne's] non-marital interest and the
> marital interest.

> 3. [Wayne] and [Chastity] shall share the cost of the
> services of such expert.

---

[2] The motion filed by Wayne Ellison actually references Kentucky Rules of Civil Procedure
(CR) 60.02. However, following the evidentiary hearing, the family court concluded that the
motion was properly filed under CR 60.01, as the Qualified Domestic Relations Order contained
a clerical mistake that was inconsistent with the agreement of the parties as set out in their
Separation Agreement.

> 4. Upon the determination of the value of the marital interest in [Wayne's] account which should have been equally divided between the parties, [Wayne] shall be entitled to a Lump Sum Judgment in the amount of the difference between fifty percent (50%) of the marital portion which [Chastity] should have received and the amount that was transferred by QDRO to [Chastity].

Order at 13.

The family court concluded that Chastity was liable to Wayne for unjust enrichment as a result of a clerical mistake in the QDRO. The court could not determine the amount of money Chastity was required to reimburse Wayne as a result of the improper distribution from Wayne's 401K, pending the parties compliance with the court's directives set out in the Order. Additionally, the court's July 25, 2023, Order did not recite that it was "final" and that there was "no just reason for delay," as required by CR 54.02(1). On its face, the Order was interlocutory and not appealable.

However, upon entry of the July 25, 2023, Order setting aside the QDRO, Chastity moved the family court on August 3, 2023, to amend the Order. Chastity also requested that the Order be vacated pursuant to CR 59.05. By Order entered August 17, 2023, the family court denied the motion, stating in relevant part:

> 1. [Chastity's] motion to amend the Court's Order of July 25, 2023[,] and for other relief is OVERRULED.

-4-

> 2. This Order shall be final and appealable and there is no
> just reason for delay.

Order at 1. Chastity then filed this appeal.

The primary issue Chastity raises on appeal is the propriety of the family court setting aside the QDRO and the determination that she is liable to Wayne for unjust enrichment as a result of the overpayment from Wayne's 401K account. As noted, however, the family court only adjudicated *part* of that claim – liability and not damages. In other words, the claim was not adjudicated in full. A judicial determination that adjudicates only part of a claim is not appealable, even if the order it arises from recites the necessary language set forth in CR 54.02. *See Tax Ease Lien Invs. 1, LLC v. Brown*, 340 S.W.3d 99, 102 (Ky. App. 2011).

Notwithstanding, Chastity argues that the family court's August 17, 2023, Order amended the July 25, 2023, Order to render that earlier order final and appealable. We disagree. In *Brown*, this Court explained that if the finality recitations do not appear in the judgment itself, a subsequent order revising the judgment "must specifically incorporate finality language in the judgment." *Id.* at 104. Here, paragraph "2" of the family court's August 17, 2023, Order did not do that; by its own plain language, the August 17, 2023, Order merely designated that order as being final and appealable. An order denying a motion to alter, amend, or vacate (a CR 59.05 motion) is never final and appealable – regardless of whether the order includes the CR 54.02 finality language, or whether the motion was

brought under the auspices of CR 54.02 or CR 59.05. *See Brown*, 340 S.W.3d at

103. And, a lower court has no authority to reconsider an interlocutory order under

CR 59.05. *Id.*

     In summation, the family court's July 25, 2023, Order is a

nonappealable, interlocutory order and this Court lacks jurisdiction to review the

same. Therefore, the appeal is DISMISSED.

     ALL CONCUR.

ENTERED: **NOV 0 8 2024**

                                JUDGE, COURT OF APPEALS

BRIEFS FOR APPELLANT:        BRIEF FOR APPELLEE:

Jeffrey O. Casazza              Jacqueline S. Sawyers
Florence, Kentucky              Fort Mitchell, Kentucky

## DECLARATION IN SUPPORT OF OBJECTION TO CLAIM 9-1

I, the undersigned, declare as follows:

1. I am the debtor in the above-captioned bankruptcy case and am submitting this declaration in support of my objection to Claim 9-1 filed by or on behalf of Wayne Ellison.

2. The amount listed in Claim 9-1 is disputed and not supported by a valid final judgment. The claim includes a repayment demand that is based on a QDRO (Qualified Domestic Relations Order) that was entered without proper tracing of the marital and non-marital portions of the account. No expert report was completed prior to submission, and the amount was not verified through a complete calculation.

3. The state court later acknowledged that tracing had not been completed and ordered a tracing after funds were already frozen and after enforcement was attempted. The order leading to the claim is interlocutory, as confirmed by the Kentucky Court of Appeals in correspondence acknowledging that the order was not final or appealable.

4. I paid taxes on the QDRO distribution, including $32,175.13 in federal withholding alone, and used a portion of the funds for legal fees and necessary living expenses. I also purchased a used vehicle to replace a non-functioning one. These uses were necessary at the time and made before the freeze order was served.

5. The remaining balance of approximately $79,758.78 was frozen and placed in escrow, where it remains undistributed. I disclosed these funds on my bankruptcy schedules and have requested that the bankruptcy court determine whether the claim is enforceable.

6. The state court ruling relied upon by the claimant misapplied Kentucky Rules of Civil Procedure 60.01 and 60.02 and did not establish a valid or final repayment obligation. I respectfully request that the bankruptcy court disallow this claim under 11 U.S.C. § 502(b)(1) as unenforceable under applicable nonbankruptcy law.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 23, 2025.

_____

Debtor (Chastity Ellison)

## DECLARATION IN SUPPORT OF OBJECTION TO CLAIM 9-1

I, the undersigned, declare as follows:

1. I am the debtor in the above-captioned bankruptcy case and am submitting this declaration in support of my objection to Claim 9-1 filed by or on behalf of Wayne Ellison.

2. The amount listed in Claim 9-1 is disputed and not supported by a valid final judgment. The claim includes a repayment demand that is based on a QDRO (Qualified Domestic Relations Order) that was entered without proper tracing of the marital and non-marital portions of the account. No expert report was completed prior to submission, and the amount was not verified through a complete calculation.

3. The state court later acknowledged that tracing had not been completed and ordered a tracing after funds were already frozen and after enforcement was attempted. The order leading to the claim is interlocutory, as confirmed by the Kentucky Court of Appeals in correspondence acknowledging that the order was not final or appealable.

4. I paid taxes on the QDRO distribution, including $32,175.13 in federal withholding alone, and used a portion of the funds for legal fees and necessary living expenses. I also purchased a used vehicle to replace a non-functioning one. These uses were necessary at the time and made before the freeze order was served.

5. The remaining balance of approximately $79,758.78 was frozen and placed in escrow, where it remains undistributed. I disclosed these funds on my bankruptcy schedules and have requested that the bankruptcy court determine whether the claim is enforceable.

6. The state court ruling relied upon by the claimant misapplied Kentucky Rules of Civil Procedure 60.01 and 60.02 and did not establish a valid or final repayment obligation. I respectfully request that the bankruptcy court disallow this claim under 11 U.S.C. § 502(b)(1) as unenforceable under applicable nonbankruptcy law.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 23, 2025.

_____

Debtor (Chastity Ellison)

## DECLARATION IN SUPPORT OF OBJECTION TO CLAIM 9-1

I, the undersigned, declare as follows:

1. I am the debtor in the above-captioned bankruptcy case and am submitting this declaration in support of my objection to Claim 9-1 filed by or on behalf of Wayne Ellison.

2. The amount listed in Claim 9-1 is disputed and not supported by a valid final judgment. The claim includes a repayment demand that is based on a QDRO (Qualified Domestic Relations Order) that was entered without proper tracing of the marital and non-marital portions of the account. No expert report was completed prior to submission, and the amount was not verified through a complete calculation.

3. The state court later acknowledged that tracing had not been completed and ordered a tracing after funds were already frozen and after enforcement was attempted. The order leading to the claim is interlocutory, as confirmed by the Kentucky Court of Appeals in correspondence acknowledging that the order was not final or appealable.

4. I paid taxes on the QDRO distribution, including $32,175.13 in federal withholding alone, and used a portion of the funds for legal fees and necessary living expenses. I also purchased a used vehicle to replace a non-functioning one. These uses were necessary at the time and made before the freeze order was served.

5. The remaining balance of approximately $79,758.78 was frozen and placed in escrow, where it remains undistributed. I disclosed these funds on my bankruptcy schedules and have requested that the bankruptcy court determine whether the claim is enforceable.

6. The state court ruling relied upon by the claimant misapplied Kentucky Rules of Civil Procedure 60.01 and 60.02 and did not establish a valid or final repayment obligation. I respectfully request that the bankruptcy court disallow this claim under 11 U.S.C. § 502(b)(1) as unenforceable under applicable nonbankruptcy law.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 23, 2025.

_____

Debtor (Chastity Ellison)

## DECLARATION IN SUPPORT OF OBJECTION TO CLAIM 9-1

I, the undersigned, declare as follows:

1. I am the debtor in the above-captioned bankruptcy case and am submitting this declaration in support of my objection to Claim 9-1 filed by or on behalf of Wayne Ellison.

2. The amount listed in Claim 9-1 is disputed and not supported by a valid final judgment. The claim includes a repayment demand that is based on a QDRO (Qualified Domestic Relations Order) that was entered without proper tracing of the marital and non-marital portions of the account. No expert report was completed prior to submission, and the amount was not verified through a complete calculation.

3. The state court later acknowledged that tracing had not been completed and ordered a tracing after funds were already frozen and after enforcement was attempted. The order leading to the claim is interlocutory, as confirmed by the Kentucky Court of Appeals in correspondence acknowledging that the order was not final or appealable.

4. I paid taxes on the QDRO distribution, including $32,175.13 in federal withholding alone, and used a portion of the funds for legal fees and necessary living expenses. I also purchased a used vehicle to replace a non-functioning one. These uses were necessary at the time and made before the freeze order was served.

5. The remaining balance of approximately $79,758.78 was frozen and placed in escrow, where it remains undistributed. I disclosed these funds on my bankruptcy schedules and have requested that the bankruptcy court determine whether the claim is enforceable.

6. The state court ruling relied upon by the claimant misapplied Kentucky Rules of Civil Procedure 60.01 and 60.02 and did not establish a valid or final repayment obligation. I respectfully request that the bankruptcy court disallow this claim under 11 U.S.C. § 502(b)(1) as unenforceable under applicable nonbankruptcy law.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 23, 2025.

_____

Debtor (Chastity Ellison)

jsawyers@jsawyerslaw.com

| | |
|---|---|
| **From:** | Laura Oldfield <loldfield@laolaw.com> |
| **Sent:** | Tuesday, February 7, 2023 2:07 PM |
| **To:** | Jackie Sawyers (jsawyers@jsawyerslaw.com) |
| **Subject:** | FW: Ellison QDRO - Pending |
| **Attachments:** | TRACING - What to Expect 6.8.22.pdf |

I believe this is when it started.

Sincerely;

Laura A. Oldfield

**From:** Don Nageleisen <dlnlegalmail@yahoo.com>
**Sent:** Thursday, June 23, 2022 2:37 PM
**To:** Laura Oldfield <loldfield@laolaw.com>
**Subject:** Re: Ellison QDRO - Pending

I'm real curious here and will have more questions.  Let me know how much.   Thxs don

Sent from my iPhone

> On Jun 23, 2022, at 2:29 PM, Laura Oldfield <loldfield@laolaw.com> wrote:
>
> Apparently Eileen needs to do a calculation to account for the separation of the increase in value of the nonmartial portion and the creation of the marital portion.  I have asked for an estimate of the cost and I don't yet have that but I will forward when I receive it.  Let me know your thoughts.
>
> Sincerely;
>
> Laura A. Oldfield
>
> **From:** Jordan Neff <jordan@ezqdrolaw.com>
> **Sent:** Wednesday, June 22, 2022 2:15 PM
> **To:** Laura Oldfield <loldfield@laolaw.com>
> **Subject:** RE: Ellison QDRO - Pending
>
> Good Afternoon Attorney Oldfield,
>
> This is something that comes up regularly, I think because age and service defined *benefit* plans (*i.e.*, pensions) divide 'marital' portions as a matter of course. But effectively no defined *contribution* (*e.g.*, 401(k), 403(b), IRA, etc.) plan will do this.
>
> Typically what we'd need to do now is open an hourly file, and get statements for the account through the marital period. Using the statement history, Eileen would calculate the value of Participant's pre-marital balance and passive growth thereon during the marriage. She <u>defers to you</u>, however, in terms of how you want to proceed with calculating this amount, whether that means hiring her or handling

1

EXHIBIT

C

7A3E5285-B0E1-4DBE-8221-2E95A44BEB8F : 000035 of 000054

with opposing counsel. In no case will the plan accept an assignment that is not easily calculated, like X% or $Y as of MM/DD/YYYY.

We haven't officially added this to our website yet, but I've attached an explainer on Account Traces we're working on finalizing, in hopes it answers any other questions you or your client may have about account traces and these sorts of calculations.

If you decide to retain Eileen to calculate the amount of the 'marital portion' assignment, just let me know and I will prepare an hourly contract detailing what she needs to get started.

Thank you again,

*Please note: our firm will be closed beginning 7/4/2022 through 7/11/2022 for summer vacation. Non-urgent requests for assistance received during this time will be addressed upon our reopening in order of receipt.*

--

**Jordan Neff**
Paralegal
The Law Office of J. Eileen Zell, PLLC
Mailing: P.O. Box 17872, Ft. Mitchell, KY 41017-0872
Office Location: 514 Washington Avenue, Newport, KY 41071
Phone: 859.652.3820

**EZ QDRO LAW Blog**
**www.ezqdrolaw.com**
**twitter.com/ezqdrolaw**



Any information provided which is not subject to the terms of a signed contract is not legal advice.

**From:** Laura Oldfield <loldfield@laolaw.com>
**Sent:** Wednesday, June 22, 2022 1:45 PM
**To:** Jordan Neff <jordan@ezqdrolaw.com>
**Subject:** Re: Ellison QDRO - Pending

50% of marital portion is what we agreed to. I'm not sure exactly what you mean by assignment. But the parties agreed that wife would get half of the marital portion only. Does Eileen need to work on that outside of the QDRO ? My understanding is they usually calculate it in-house but maybe I'm wrong about that let me know.

Sincerely,

Laura A. Oldfield
463 Commonwealth Ave
Erlanger Kentucky 41018
859-282-8500

---

**From:** Jordan Neff <jordan@ezqdrolaw.com>
**Sent:** Wednesday, June 22, 2022 1:36:14 PM
**To:** Laura Oldfield <loldfield@laolaw.com>
**Subject:** Ellison QDRO - Pending

Good Afternoon Attorney Oldfield,

Our office received your mailer in the **Ellison** matter; thank you again for entrusting us to assist.

With your completed Intake Contract, I've requested the QDRO Procedures from our plan contact (they require participant information for requests), and will update you as soon as they're received.

A question I have about this file: I alluded to this in the Intake, but the agreement language strongly suggests that the parties intend that the assignment should come from the 'marital portion' of the account. Is this something you'd like Eileen to open an hourly matter to assist with (calculating and excluding any pre-marital amount(s) from the award), or shall she proceed with drafting the 'straight' 50% assignment set forth in your Intake Contract?

Thank you,

*Please note: our firm will be closed beginning 7/4/2022 through 7/11/2022 for summer vacation. Non-urgent requests for assistance received during this time will be addressed upon our reopening in order of receipt.*

--
**Jordan Neff**
Paralegal
The Law Office of J. Eileen Zell, PLLC
Mailing: P.O. Box 17872, Ft. Mitchell, KY 41017-0872
Office Location: 514 Washington Avenue, Newport, KY 41071
Phone: 859.652.3820

**EZ QDRO LAW Blog**
**www.ezqdrolaw.com**
**twitter.com/ezqdrolaw**





Any information provided which is not subject to the terms of a signed contract is not legal advice.

# TRACING: WHAT TO EXPECT



*J. Eileen Zell, Esq. – QDRO Attorney*

The Law Office of J. Eileen Zell, PLLC
P.O. Box 17872
Ft. Mitchell, Kentucky 41017-0572
(859) 242.5290
eileen@ezqdrolaw.com
www.ezqdrolaw.com

## WHAT IS A TRACE ANALYSIS AND HOW DOES IT AFFECT MY QDRO?

A Qualified Domestic Relations Order (QDRO or DRO) simply assigning 50% of the *marital portion* of a 401(k) is likely to be rejected by the plan—or even worse—approved but misinterpreted. WHY? Most plans will not make calculations between two dates (marriage and divorce), and no plan will calculate returns on a non-marital balance. A Trace Analysis determines *what exactly the marital portion is, in terms of dollars,* for purposes of drafting the QDRO. Tracing 'grows' a specified plan balance over a defined time-period based on market activity or returns, contributions, loans, and distributions.

## WHAT SITUATIONS REQUIRE A TRACE ANALYSIS?

➢ *If a party contributed to a defined contribution plan before the marriage* (such as a 401(k), 403(b), 457(b), ESOP, or profit-sharing plan), tracing the account balance from the date of marriage to current is necessary to calculate what pre-marital contributions are worth today. A Trace Analysis establishes the investment return on the pre-marital balance that should be excluded from the marital portion for purposes of equitable division.

➢ *If a plan changes custodians and no longer has account history* to calculate returns from the divorce. Tracing post-marital balances is necessary to calculate the current values subject to equitable division.

➢ *If a party contributes to an IRA or TIAA,* because these custodians will not calculate returns at all. Tracing pre- or post-marital balances is necessary to calculate the current values subject to equitable division.

## WHY & WHEN DO I NEED A QDRO ATTORNEY TO PERFORM A TRACE ANALYSIS?

Retirement benefits are often the largest marital asset and tracing can produce significant monetary results. Bringing in an expert is about risk avoidance. Get your QDRO attorney involved as soon as you've identified one of the above situations.

➢ Tracing demands the multi-disciplinary experience of a QDRO attorney who understands your client's best interests. A financial background alone falls short; tracing requires a full understanding of domestic relations law and its impact on the benefits, federal regulatory law, plan mechanics, and careful review of individual plan terms.

➢ A proper Trace Analysis involves more than just entering numbers into a spreadsheet. *Every person's work history and overlapping marital timeline is unique, and every plan is different.* Some plans may even transfer custodians once or more over the course of the participating spouse's employment, or there may be a rollover between plans, or plan mergers.

➢ A QDRO attorney will know how to obtain historical account information, what to ask for, and what to do when there are gaps. A QDRO attorney will also ensure that the Trace Analysis meets the specific evidentiary burdens set forth under the law based on the parties' filing jurisdiction. Such expert review is critical to ensure that reasonable assumptions are made, and that accuracy is achieved to the highest degree possible.

The right QDRO attorney will give you and your client peace of mind, knowing it's getting done right.

© *2022 The Law Office of J. Eileen Zell, PLLC*

7A3E5255-B0E1-4DBE-8221-2E95A4B8EB8F : 000040 of 000054

## WHO IS EILEEN ZELL?

Eileen's entire practice is devoted to consulting with family law attorneys on a variety of QDRO-related matters, including settlement negotiations, mediation, collaboration, and litigation. Her practice focuses exclusively on the division of retirement benefits and other forms of deferred income in domestic relations matters.

Eileen is the author of "QDROs and Similar Assignments of Income/Retirement Assets," published as part of the nationally acclaimed Bloomberg Tax & Accounting Tax Management Portfolios. Eileen has been qualified as an expert witness on retirement benefits and other forms of deferred compensation for family courts in Ohio and Kentucky. She presents regularly for local and state bar associations, judges, and other professional organizations.

Working with hundreds of attorneys on both sides of the Ohio River, Eileen successfully negotiates and promotes creative settlement solutions, accomplishes client goals, and navigates even the most difficult litigation issues.



*Check out our EZ QDRO Law Blog, a proprietary QDRO database of case law and legal research library for attorneys.*

### HOW DOES THE TRACE ANALYSIS & QDRO PROCESS WORK?

(1) Eileen is engaged through counsel to evaluate the case;

(2) Plan documents are obtained, including account history, governing plan documents, and the plan's written QDRO procedures;

(3) Eileen performs the Trace Analysis;

(4) Eileen drafts the QDRO and submits it to representing counsel;

(5) Counsel reviews the Trace and QDRO with the parties;

(6) Counsel submits the QDRO to the Court for entry into the Court record and then submits to the plan for approval; and

(7) The plan reviews the QDRO (or a draft, for pre-approval) and determines whether it 'qualifies' under federal law and plan terms.

### HOW LONG DOES THE TRACE ANALYSIS & QDRO TAKE?

It depends on how fast the parties can gather needed information and documents. The parties control the timeline here, and getting this quickly can allow the next phase to begin immediately. The timing to perform the Trace Analysis will vary with each project, based on specific account history and the time period involved. Depending on Eileen's caseload, the actual 'QDRO drafting' may take around 5-10 business days, and is typically the shortest part of the process. As for the plan's review, federal law only requires that it be completed within a "reasonable time." Keep in mind, the nonemployee-spouse has no ownership rights under federal law prior to the plan's approval of the QDRO, and may be restricted by plan terms from an immediate distribution or commencement of benefits thereafter.

### HOW DO I GET STARTED?

Eileen will identify the needed plan information, and representing counsel will gather this and complete the Hourly Contract for the Trace Analysis and Intake Contract for the QDRO.

Tracing is subject to Eileen's hourly fee. Most QDROs or similar orders are drafted for a flat fee, and are subject to the terms of Eileen's Intake Contract. Attorneys representing the parties will incur their own expenses, related to any negotiation or discussion of the Trace Analysis and QDRO's terms with other counsel or their client, review of the Trace Analysis and QDRO, other preparation, and entry and submission of the QDRO.

Eileen is a third-party consultant to family law attorneys, and does not represent parties directly. This document is intended to aid with attorney-client discussions related to the Trace Analysis and QDRO processes, only.

*This pamphlet does not constitute legal advice and is provided for general information purposes, only.*

**jsawyers@jsawyerslaw.com**

| | |
|---|---|
| **From:** | Laura Oldfield <loldfield@laolaw.com> |
| **Sent:** | Tuesday, February 7, 2023 2:04 PM |
| **To:** | Jackie Sawyers (jsawyers@jsawyerslaw.com) |
| **Subject:** | FW: Ellison - Account Trace |

Here is some if it.

Sincerely;

Laura A. Oldfield

**From:** Don Nageleisen <dlnlegalmail@yahoo.com>
**Sent:** Tuesday, October 4, 2022 8:27 AM
**To:** Laura Oldfield <loldfield@laolaw.com>
**Subject:** Re: Ellison - Account Trace

Laura,

Let's keep this simple.  I understand we have two separate things.   My client and I paid the original $250.   That was confirmed.   Then I paid $297.50 last week to you but you indicated it was the wrong amount.      Give me a breakdown of what my client and I owe and what we are getting credit for already having paid.   I know Eileen Zell and you are very good friends.   She refuses to return calls to me or my office.    I need answers asap or I will have no choice but to file motions here.   This should be simple.  I agree.    I have no clue as to why Eileen Zell refuses to call anyone from my office back including me.   She is willing to take money from me thus surely one would think she would call me back.   Help me out here.  I need answers today.   Don

*Donald L. Nagekeisen, P.L.L.C.*
*Attorney & Counselor at Law*
*2216 Dixie Highway Suite 203*
*Phone: 859-491-8887*
*Fax: 859-491-5544*
email: dlnlegalmail@yahoo.com

On Thursday, September 29, 2022 at 02:09:17 PM EDT, Laura Oldfield <loldfield@laolaw.com> wrote:

Don this is getting to be ridiculous.  Its like you refuse to read the documents and emails that you are sent.  THE QDRO AND THE CALCULATIONS OF YOUR CLIENT'S NON-MARITAL ACCOUNT ARE **TWO** DIFFERENT THINGS. Think if it this way if a client hired you to prepare their Will and then later hired you for a DUI you would not apply the money paid for the will to the DUI.

1

7A3E5255-B0E1-4DBE-8221-2E95A4B8EB8F : 000042 of 000054

Honestly I am getting tired of constantly answering the same questions. Additionally, I do it in an email because when you say that I don't tell you something I have the email as proof that I did tell you.

So here is the deal, either you can agree to send the rest of the money for the calculations or we can just enter the QDRO with the date of divorce / date of marriage calculations. If we agree to the QDRO without the calculations, I will send you back the check you just dropped off and have Eileen prepare the document with the $500 ($250 from each client) that has already been paid.

Just let me know how you wish to proceed.  Also, because this case is so rife with misunderstandings I will ask that we stick to email for communication.

Sincerely,

Laura A. Oldfield

**From:** Don Nageleisen <dlnlegalmail@yahoo.com>
**Sent:** Thursday, September 29, 2022 1:58 PM
**To:** Laura Oldfield <loldfield@laolaw.com>
**Subject:** Re: Ellison - Account Trace

I cannot imagine what is so difficult here.   I paid someone $250 as requested in the beginning and now I paid additional $297.50 as requested.   Eileen Zell is impossible to reach.   She never calls back.   She hasn't done much of anything.   She only takes payments from the lawyer.   How ridiculous is this really.   36 years of practicing law and have never dealt with such nonsense.    I am really really aggravated here.   I'm tired of playing this game.   Someone needs to call me.

*Donald L. Nageleisen, P.L.L.C.*

*Attorney & Counselor at Law*

*2216 Dixie Highway Suite 203*

Phone: 859-491-8887

Fax: 859-491-5544

email: dlnlegalmail@yahoo.com

7A3E5255-B0E1-4DBE-8221-2E95A4B8EB8F : 000044 of 000054

On Thursday, September 29, 2022 at 01:44:03 PM EDT, Laura Oldfield <loldfield@laolaw.com> wrote:

I am forwarding this email to you because I received your check in the amount of $297.50. I mentioned in this as well as multiple other emails that the amount if $547.50. Please read this email before you ask me to explain again why the amount is incorrect. I will forward the funds that you have provided to Eileen when I receive the remaining $250. My client has already paid her half (many weeks ago).

Sincerely;

Laura A. Oldfield

**From:** Don Nageleisen <dlnlegalmail@yahoo.com>
**Sent:** Tuesday, September 6, 2022 4:05 PM
**To:** Laura Oldfield <loldfield@laolaw.com>
**Subject:** Re: Ellison - Account Trace

So how much have you received from me.   I know you said the $297.00 not received yet.   Did you receive the $250?   Guess I partying too much this weekend..   Don

*Donald L. Nageleisen, P.L.L.C.*

3

*Attorney & Counselor at Law*

*2216 Dixie Highway Suite 203*

*Phone: 859-491-8887*

*Fax: 859-491-5544*

email: dlnlegalmail@yahoo.com

On Tuesday, September 6, 2022 at 03:59:08 PM EDT, Laura Oldfield <loldfield@laolaw.com> wrote:

That was for the original QDRO.  This is for the tracing which is a separate fee.  Once the tracing is done then it is my understanding that those numbers would be used in the QDRO for the actual division.

Sincerely;

Laura A. Oldfield

**From:** Don Nageleisen <dlnlegalmail@yahoo.com>
**Sent:** Tuesday, September 6, 2022 3:52 PM
**To:** Laura Oldfield <loldfield@laolaw.com>
**Subject:** Re: Ellison - Account Trace

**I thought we sent $250 before that but maybe I'm just going crazy.   I know the client gave somebody $250.   Don**

4

*Donald L. Nageleisen, P.L.L.C.*

*Attorney & Counselor at Law*

*2216 Dixie Highway Suite 203*

*Phone: 859-491-8887*

*Fax: 859-491-5544*

email: dlnlegalmail@yahoo.com

On Tuesday, September 6, 2022 at 03:47:21 PM EDT, Laura Oldfield <loldfield@laolaw.com> wrote:


Nothing yet but the mail is slow.  I am just referring to you email where you said that you were sending $297.50.  I will let you know as soon as I receive the check in the mail


Sincerely;


Laura A. Oldfield


**From:** Don Nageleisen <dlnlegalmail@yahoo.com>
**Sent:** Tuesday, September 6, 2022 3:46 PM
**To:** Laura Oldfield <loldfield@laolaw.com>
**Subject:** Re: Ellison - Account Trace


Laura,


How much have you received from me please?   Don

5

*Donald L. Nageleisen, P.L.L.C.*

*Attorney & Counselor at Law*

*2216 Dixie Highway Suite 203*

*Phone: 859-491-8887*

*Fax: 859-491-5544*

email: dlnlegalmail@yahoo.com

On Tuesday, September 6, 2022 at 03:42:21 PM EDT, Laura Oldfield <loldfield@laolaw.com> wrote:

This has the fee in it which is $1097 which is $547.50 each.  If you only mailed the amount in your initial email please send the additional $250 as soon as possible.  Thanks.

Sincerely;

Laura A. Oldfield

**From:** Jordan Neff <jordan@ezqdrolaw.com>
**Sent:** Friday, September 2, 2022 3:36 PM
**To:** Laura Oldfield <loldfield@laolaw.com>; Don Nageleisen <dlnlegalmail@yahoo.com>
**Cc:** Eileen Zell <eileen@ezqdrolaw.com>
**Subject:** Ellison - Account Trace

Good Afternoon Counselors,

6

I hope you have enjoyed your week, and have a wonderful holiday weekend ahead of you.

Eileen asked me to touch base in the **Ellison** matter, to see if I might be of assistance. To keep everyone on the same page, Eileen asked me to copy both of your offices in my reply here.

I've attached a 'Tracing – What to Expect' pamphlet that discusses what an account trace is, when it's needed, and of course what to expect.

In this case, the parties agreed to a 50% assignment from the 'marital portion' of the participant's account. The marriage was relatively brief, and the pre-marital interest we understand should be excluded from the assignment substantial. Based on this, our office discussed the potential need of an account trace to calculate the award with Attorney Oldfield (this isn't a pension with a formula that supports 'marital' assignments; the award needs to be calculated), and we are/were just waiting for the go-ahead to proceed.

It sounds like we are ready to proceed. And I will prepare Eileen's Hourly Contract (with $1,095 retainer), and detail the account statements/history she needs to perform the calculation when our office reopens Tuesday.

Please let me know if I may be of further assistance in the interim, and thank you again.

--

**Jordan Neff**

Paralegal

The Law Office of J. Eileen Zell, PLLC

Mailing: P.O. Box 17872, Ft. Mitchell, KY 41017-0872

Office Location: 514 Washington Avenue, Newport, KY 41071

Phone: 859.652.3820

## EZ QDRO LAW Blog

**www.ezqdrolaw.com**
**twitter.com/ezqdrolaw**



7A3E5255-B0E1-4DBE-8221-2E95A4B8EB8F : 000049 of 000054

Any information provided which is not subject to the terms of a signed contract is not legal advice.

**From:** Laura Oldfield <loldfield@laolaw.com>
**Sent:** Wednesday, August 31, 2022 2:05 PM
**To:** Jordan Neff <jordan@ezqdrolaw.com>; dlnlegalmail@yahoo.com
**Subject:** RE: Ellison - Voided Check

Don

I am not sure what is happening here. I know that we are going to order the tracing and equally divide the costs. I have not sent my client's money in yet although I have $650 waiting to be sent. Let me know and I will send in the money to start the tracing.

Sincerely;

Laura A. Oldfield

**From:** Jordan Neff <jordan@ezqdrolaw.com>
**Sent:** Wednesday, August 31, 2022 1:44 PM
**To:** dlnlegalmail@yahoo.com

8

**Cc:** Laura Oldfield <loldfield@laolaw.com>
**Subject:** Ellison - Voided Check

Good Afternoon Attorney Nageleisen,

I hope you and your office are doing well, and have enjoyed your week thus far. Your client, Wayne **Ellison**, recently delivered a letter from you with a check payable from his own account. While our office cannot accept payments from non-attorney parties, there may be no harm done, since I'm not showing any amount due at this time (though I know there may be an account trace requested).

Please let me know if you'd like me to send you an image of your client's voided check, and enjoy the rest of your day.

Thank you,

--

**Jordan Neff**

Paralegal

The Law Office of J. Eileen Zell, PLLC

Mailing: P.O. Box 17872, Ft. Mitchell, KY 41017-0872

Office Location: 514 Washington Avenue, Newport, KY 41071

Phone: 859.652.3820

## EZ QDRO LAW Blog

**www.ezqdrolaw.com**
**twitter.com/ezqdrolaw**



Any information provided which is not subject to the terms of a signed contract is not legal advice.

7A3E5265-B0E1-4D8E-8221-2E95A4B8EB8F : 000051 of 000054

# THE LAW OFFICE OF
# LAURA A. OLDFIELD

Laura A. Oldfield PLLC
w w w . l a o l a w . c o m

463 Commonwealth Avenue
Erlanger, Kentucky 41018
Licensed to practice in Kentucky and Ohio

Telephone: 859.282.8500
Facsimile: 859.282.9895
Email: loldfield@laolaw.com

October 19, 2022

Hon. Donald Nageleisen
2216 Dixie Highway, Ste 203
Ft. Mitchell, Kentucky 41017

     Re: Ellison check return

Dear Don:

Enclosed please find the check that you sent to me.  I had initially stamped it for deposit, but I have blacked out that information.

Very truly yours,

LAURA A. OLDFIELD

Enclosure
File No. 21155



**DONALD L NAGELEISEN** 05-11
2216 DIXIE HWY STE 203
FT MITCHELL, KY 41017-2966

1268

9-28-22

Pay to the
Order of _____ Laura Oldfield _____ $ 297.50

_____ Two Hundred Ninety Seven Dollars 50/100 _____ Dollars

**PNC BANK**

PNC Bank, NA 071

For _____ Wayne Ellison _____

⑆071918918⑆ ⑈4807348057⑈ 1268

LAURA A. OLDFIELD PLLC
ATTORNEY AT LAW
463 COMMONWEALTH AVENUE
ERLANGER, KY 41018



CINCINNATI OH 452
20 OCT 2022 PM 4 L

ENERGY
ACTION
TH

Hon. Donald Nageleisen
2216 Dixie Highway, Ste 203
Ft. Mitchell, Kentucky 41017

41017-296653

7A3E5255-B0E1-4DBE-8221-2E95A4B8EB8F : 000054 of 000054

COMMONWEALTH OF KENTUCKY
KENTON CIRCUIT COURT
FAMILY COURT DIVISION 2

IN RE: THE MARRIAGE OF    :    CASE NO. 21-CI-01554

WAYNE ELLISON    :

    PETITIONER    :

AND    :    **SEPARATION AGREEMENT**

CHASTITY ELLISON    :

    RESPONDENT    :

* * *

THIS AGREEMENT made and entered into in the Commonwealth of
Kentucky by and between Chastity Ellison, hereinafter referred to as "Wife",
and Wayne Ellison, hereinafter referred to as "Husband";

WHEREAS the parties have pending an action styled and numbered as
above for dissolution of marriage dissolving the marital relationship; and
WHEREAS, the parties wish to amicably divide all of their marital property,
restore their non-marital property and provide for the payment of debt.

NOW, THEREFORE, in consideration of the promises and mutual
covenants hereinafter contained, the parties do agree as follows:

1)    Separation. The parties hereinafter shall agree to live separate and
apart from each other without any interference, direction or control from the
other.

2)    Real Property.    The parties have agreed that the Husband will
retain the residence at 436 General Dr. Ft. Wright, Kentucky. The parties


EXHIBIT
D

acknowledge that the Husband owned the property prior to the marriage and

that the Wife is not listed on either the deed or the mortgage to this property.

The Husband will be responsible for all costs associated with this property and

shall pay to Wife the sum of $13,160 as her martial portion of the real estate

within 90 days of the date of the signing of this agreement.   The Husband shall

mail the payment under this section to attorney for Wife within the time frame

prescribed in this agreement.

3]   <u>Personal Property</u>.      The parties have divided their personal

property by agreement.  Each party shall retain the property currently in his or

her respective possession.  Husband shall immediately surrender the password

the laptop in Wife's possession and the password to the golf simulator program.

Wife shall retain her vehicle a 2015 Jeep Wrangler.  There is

currently a lien on this vehicle and Husband agrees that he will pay off the

current debt and then this vehicle shall be transferred into Wife's name alone.

**Until the transfer Husband shall be responsible for all lien payments, taxes**

**and insurance on the vehicle.**  After the lien has been paid and the vehicle

transferred to Wife she shall be responsible for payment of all taxes and

insurance on that vehicle and shall hold husband harmless thereon.

Husband shall retain his vehicle a Ford Mustang.  There is no lien

on this vehicle.  Husband shall be responsible for all taxes and insurance on

this vehicle and shall hold Wife harmless thereon.   The vehicle is titled in

Husband's name alone.

SA  000002 of 000008

4)   <u>Bank Accounts</u>.   The parties have o joint checking accounts.
Each party shall retain all funds currently on deposit in his or her individual
name.

5)   <u>Retirement accounts:</u>

The Wife has a 401K in her name with her current employer, Penn
National Gaming Inc.  Wife shall retain 100% of her interest in that account.

The Husband has a 401k with Fifth Third Bank in his name.
Husband agrees that he has not removed any funds from this account during
the marriage.  Any loans that may have been taken against that account will be
Husband's responsibility and shall not be taken from Wife's marital portion.
**The marital portion of this account shall be divided via QDRO.  The parties
agree that the martial portion shall be divide equally between the parties, plus
or minus any investment gains or losses.  The marital portion shall be defined
as the benefit accrued from the date of marriage through the date of divorce.**
The parties agree that they will retain Eileen Zell to prepare the QDRO for the
division of this account and **each shall be responsible for 50% of the cost of
division of the account and the fees to Eileen Zell.**

Neither party has any interest in any other retirement account that
is not listed in this agreement.

6)   <u>Debts</u>.   The parties have no joint debts.  Each party shall be
responsible for any debt currently held in their name.  **Each party shall pay
any and all debt currently held in his or her own name** and shall hold the other
harmless thereon.  Both parties agree that neither shall hereinafter incur any

SA  000003 of 000008

debts or obligations on the credit of the other and shall indemnify and hold the other harmless from any and all obligations so charged or otherwise incurred.

7)   <u>Maintenance</u>.        Neither party shall pay maintenance to the other.

8]   <u>Investment accounts and employee bonuses.</u>

The husband has an investment account with TD Ameritrade. The parties agree that this is a non-marital account and Husband shall be entitled to 100% interest in this account without any claim from Wife. Husband shall retain 100% interest in the crypto currency account currently held in his name.

The Husband is to receive a bonus from his employment for 2021. Husband shall pay to Wife the sum of $5,000 for her interest in the bonus within 7 days of receipt of said bonus or within 7 days of the signing of this agreement whichever is later. The Husband shall send the payment for this provision to Wife's attorney within the time frame prescribed in this agreement.

Husband shall retain 100% interest in his HAS account. Wife waives any interest that she may have in that account.

9]   <u>2021 Income Tax Return:</u>        **The parties agree that they will each file a married filing separate** state and federal income tax return for 2021. The parties further agree that they will each receive their own refund and/ or be responsible for their own debt **and that the other spouse has no liability for any debt or claim on any refund.**

SA 000004 of 000008

10]   <u>Court costs and Attorney Fees:</u>      The Wife is represented by

Laura Oldfield.  Husband is represented by Donald Nageleisen.  Each party

shall be responsible for their respective attorney fees.

If either party has to seek enforcement of this Agreement in court

due to the other party's failure to comply with the terms of this Agreement and

the court finds that the enforcement action was proper and/or the other party

is found to be in contempt of court, the non-complying party shall pay to the

enforcing party all of his or her costs and legal fees for such action.

11]   <u>Effective Date</u>.      **The parties agree that this Agreement is to take**
**effect as of the date of the signing of same.**

12]   <u>Modification</u>.      The parties agree that this Agreement is a full

and final agreement except as otherwise noted in this agreement and shall not

be modified, changed or altered except that it be done in writing and signed by

both parties.

13]   <u>Performance of Necessary Acts</u>.      The parties agree to execute

and deliver any and all instrument, including bills of sale or other documents,

and perform any act which may be required or necessary to carry out and

effectuate any and all of the terms of this Agreement.  Upon the failure of either

party to execute and deliver any such instruments, this Agreement shall

constitute and operate as such properly executed document.

14]   <u>Representation of Financial Status</u>.  The parties agree that each

has made a true and correct representation of his or her financial status,

including possible expectancies and inheritances.  The parties have waived the

exchange of Initial Financial Disclosures and have waived the filing and
exchange of the Final Verified Financial Disclosures.

15]    Understanding.    The parties state that they fully understand all
of the terms herein set forth and that all of the terms represent and constitute
the entire understanding between the parties.  Each party has read the
agreement and believes the agreement to be fair and equitable and that each
does voluntarily execute this Agreement by affixing his or her signature thereto.

16]    Illegal Provisions.    The parties understand and agree that if
any part, term or provision of this Agreement is held by any court to be illegal
or in conflict with any law of the Commonwealth of Kentucky, the validity of the
remaining portions or provisions shall not be affected, and the rights and
obligations of the parties shall be construed and enforced as if the Agreement
did not contain the particular part, term or provision held to be invalid.

17]    Binding of Heirs.    Both parties understand that this
Agreement shall inure to the benefit of and be binding upon their respective
executors, administrators, personal representatives, heirs, successors and
assigns.

18]    Advice of Counsel.    **Both parties acknowledge that they had
the opportunity to consult with their respective counsel** during the negotiation
and execution of this agreement.  **Wife was represented by Hon. Laura A.
Oldfield** and Husband was represented by Hon. Donald L. Nageleisen.  Both
parties agree that they are entering in this Agreement voluntarily of their own
will without any duress and with full understanding.

SA : 000006 of 000008

19] <u>Release</u>.   Each party does hereby release and discharge the other from all claims, rights and duties arising out of said marital relationship and said parties mutually agree that each party hereto may freely sell and encumber or otherwise dispose of his or her own property by gift, bill of sale or Last Will and Testament.  Each party is, by these presents, hereby barred from any and all rights or claims by way of dower, inheritances, descent and distribution, of all rights and claims as widow, widower, heir, distributee, survivor or next of kin and all other rights or claims whatsoever in or to the estate of the other, whether real or personal, or whether now opened or hereafter acquired which may in any manner arise or occur by virtue of said marriage.

20]   <u>Presentation to Court</u>.   The parties agree that in the event the Court finds the marriage between the parties to be irretrievably broken in the action now pending, then this **Agreement shall be disclosed and presented to the Court** with the request that if said Agreement is not found to be unconscionable, the Agreement **and all of its terms,** conditions and provisions hereof shall be adopted by **the Court and embodied in and made a part of the Final Order** of the Court and a Decree entered in such proceedings.

IN WITNESS WHEREOF, the undersigned have hereunto set their respective hands on the dates below written.

WAYNE ELLISON - PETITIONER

SA  000007 of 000008

_____
CHASTITY ELLISON – RESPONDENT

COMMONWEALTH OF KENTUCKY
COUNTY OF KENTON, SS

**SWORN AND SUBSCRIBED** TO before me, a Notary Public, by the above
named, WAYNE ELLISON, **on this** _11th_ **day of** _April_ 2022.

_____
Notary Public – State at Large
My Commission Expires: _May, 2024_

COMMONWEALTH OF KENTUCKY
COUNTY OF KENTON, SS

**SWORN AND SUBSCRIBED** TO before me, a Notary Public, by the above
named, CHASTITY ELLISON **on this** _28_ **day of** _March_ 2022.

_____
Notary Public – State at Large
My Commission Expires:

OFFICIAL SEAL
LAURA A. OLDFIELD
NOTARY PUBLIC - KENTUCKY
STATE-AT-LARGE
My Comm. Expires 9/22/2025
ID # KYNP37347



GABRIELLE SUMME, KENTON CO CLK
P. O. BOX 1109
COVINGTON KY 41012-1109

Present your Original Registration
and Proof of Insurance with Payment
to the County Clerk.

Renew at www.drive.ky.gov

PRESORTED
FIRST CLASS MAIL
US POSTAGE PAID
COMMONWEALTH
OF KENTUCKY
FINANCE CABINET

## MOTOR VEHICLE TAX AND/OR
## REGISTRATION RENEWAL NOTICE

DON'T WAIT IN LINE - RENEW ONLINE TODAY. VISIT
MVL.KY.GOV

COUNTY OF RESIDENCE: KENTON
VEHICLE VALUE AS OF Jan. 1, 2022:    24,575.00

| TAX JURISDICTION | RATE | $ TAX DUE |
| --- | --- | --- |
| STATE | 0.4500 | 110.59 |
| COUNTY | 0.1590 | 39.83 |
| CO SCHOOL | 0.6550 | 156.00 |
| LIBRARY | 0.0600 | 14.78 |
| HEALTH | 0.0250 | 6.14 |
| EXT SERVICE | 0.0125 | 3.03 |
| NO KY AREA PLAN | 0.0225 | 2.53 |
| CONF | | |
| C-FORT WRIGHT | 0.1977 | 48.58 |

| | | |
| --- | --- | --- |
| 08 659YTH | WRANGLE | 18 | JEEP |
| PLATE | MODEL | YR | MAKE |

VIN #: 1C4BJWDG4FL819028 999
TITLE #: 190070598095

Property tax must be paid even if registration is not renewed.
Registration Fee must be paid upon renewal.
Registration type IN GOD WE TRUST -REG

Current registration expires: 03-31-22
Registration fee presumes renewal through: 03-31-23

Notification date: 02-01-22

TAX DUE            363.80
REGISTRATION FEE    21.00

TO MAKE A VOLUNTARY DONATION TO CHILD CARE
ASSISTANCE ACCOUNT, ADD $____ TO TOTAL.
TO DONATE TO THE KY VETERANS
TRUST FD, ADD $____ TO TOTAL.

TOTAL DUE          404.50
POSTAGE & HANDLING FEE
FOR MAIL-IN RENEWAL, ADD    2.00

7235  P2 *********AUT00*5-BX6IT 43011    b45321

ELLISON, WAYNE
436 GENERAL DR
FT WRIGHT KY 41011-1867

THE LAW FIRM OF
DONALD L. NAGELEISEN, P.L.L.C.
2216 DIXIE HIGHWAY, SUITE 203
FT. MITCHELL, KY. 41017





FOREVER / USA

Laura Oldfield
4u3 Commonwealth Ave
Erlanger, KY 41018

P-D

F2EACB3E-7589-410E-8EE8-F90419128DA3 : 000018 of 000022

I Wayne Ellison are releasing owner ship
of 2015 Jeep Wrangler to Chastity Ellison
as of 2-25-2020.

Wayne Ell

Subscribed + attested on 2/25/22. My commission
expires 1/12/26.

Brooke Frazier

BROOKE FRAZIER
Notary Public
Commonwealth of Kentucky
Commission Number KYNP42983
My Commission Expires Jan 12, 2026

D-3

# APPLICATION FOR TITLE/AFFIDAVIT OF TOTAL CONSIDERATION

## BRAND DISCLOSURE

Check appropriate Block if:   ☐ Rebuilt Vehicle        ☐ Water Damaged        ☐ Hail Damaged
When Block is checked and title does not include brand, provide jurisdiction,                 and title number                        where previous brand was issued.

**IN COMPLIANCE WITH KRS 190.990(8), GIVING A FALSE STATEMENT AS TO THE TOTAL CONSIDERATION PAID IS A CLASS D FELONY WITH A MINIMUM FINE OF $2000.00.**

| Sale Price $ | Trade in $ | Net Cost $ | Tax $ |
|---|---|---|---|

**IF SALE PRICE IS LEFT INCOMPLETE, BUYER MAY BE BILLED FOR ADDITIONAL TAX, PLUS APPLICABLE PENALTY AND INTEREST (KRS 138.460).**

USAGE TAX — TRADE IN

| Make | Year | Vin No. | | Title No. |
|---|---|---|---|---|
| Make | Year | Vin No. | | Title No. |

Date of Sale

Seller and buyer further certify subject to penalties of forgery to the second degree, that each has supplied true and correct information in this document to the best of his knowledge and belief, to include the above affidavit.

## TRANSFER OF TITLE BY OWNER

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

****CAUTION READ CAREFULLY BEFORE YOU CHECK A BLOCK****
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. **WARNING — ODOMETER DISCREPANCY**

Odometer Reading (no tenths)

JOINT OWNERSHIP: ☐ (AND) REQUIRES ALL SIGNATURES ☐ (OR) REQUIRES ONE SIGNATURE
The undersigned owner hereby certifies that the vehicle described in this title has been transferred to the following transferee/buyer.

Wayne Ellison

| Transferor/Seller Printed Name | Seller/Dealer No. | Transferee/Owner/Buyer Printed Name | Fed ID/SSN/DLN | DOB |

| Transferor/Seller Printed Name | | Transferee/Owner/Buyer Printed Name | Fed ID/SSN/DLN | DOB |
436 General Dr               889-803-4951

| Street Address | Phone No. | Mailing Address | | Phone No. |
Ft Wright   Kenton   Ky   41011

City   County   State   Zip | City   County   State   Zip

| Lessee Name or Other | Residential Address | Email Address |

| Street Address | Phone No. | City   County   State   Zip |

| City | County | State | Zip |

### REQUIRED FOR BOAT TRANSFER

Citizenship of Applicant          Sex          County of Dockage

I HEREBY APPLY FOR REGISTRATION AND A CERTIFICATE OF TITLE. I CERTIFY THAT THE DESCRIBED MOTORBOAT WILL BE OPERATED CONSISTENT WITH THE CLASSIFICATION REFERENCED HEREIN, AND THE MARINE SANITATION DEVICE FOR THE TOILET, IS PROPERLY OPERATING AND PROPERLY USED FOR THE WATER BODY WHERE THE MOTORBOAT IS KEPT OR OPERATED. I FURTHER CERTIFY UNDER THE PENALTY DESCRIBED HEREIN, THAT I HAVE SUPPLIED TRUE AND CORRECT INFORMATION TO THE BEST OF MY KNOWLEDGE AND BELIEF.

#### BOAT - COMPLETE IF CHANGING MOTOR

| Motor Make | Year | H.P. | #Motors |
|---|---|---|---|

| Motor Serial No. | Purchase Year | Purchase Amount |

I WARRANT THAT THE MOTORBOAT DESCRIBED HEREIN IS NOT SUBJECT TO AN UNTERMINATED LIEN AND THAT NO LOAN IN CONNECTION WITH THIS MOTORBOAT HAS NOR WILL BE APPLIED FOR BY SELLER WITHIN 30 DAYS OF THIS APPLICATION. I HEREBY CERTIFY THAT THE FOREGOING INFORMATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

I (☐have) (☐have not) applied for a loan in connection with the vehicle described herein and if not, I (☐ will) (☐ will not) apply for a loan within 30 days of this application.

Date of Transfer   3-14-2022

Wayne Ellison
Transferor(s)/Seller(s) Signature

First Lienholder

Address
County where Lien will be filed

Transferee(s)/Owner/Buyer(s) Signature

Subscribed and attested before me this date 3-14-22   My Commission expires 5-14-22   Subscribed and attested before me this date __/__/__   My Commission expires __/__/__

Attesting Official/Notary Signature   Attesting Official/Notary Signature

## COUNTY CLERK USE ONLY

| CLERK ID | CLERK'S FEE | FEES INVOICED | STATE FEE |
|---|---|---|---|
| TYPE APPLICATION | DATE OF ISSUANCE | TITLE NO. | PLATE NO./DECAL |

I certify subject to the penalty provisions of KRS 186A.990 that I have reviewed this application and the documents supporting it and that the same are present and compliant with this application that I received the application on the date and time indicated hereon and that I have voluntarily submitted it. I further certify that the required information has been entered into the Kentucky Automated Vehicle Information System (AVIS).

SIGNATURE/TITLE OF ISSUER         COUNTY                    DATE         TIME

I certify that the lien indicated in the block has been noted in the automated system and that a title will be withheld for 20 days, or until licensing statement and lien required are returned, whichever occurs first.

Signature _____    Date _____

DO NOT ACCEPT THIS DOCUMENT ANY ERASURES, ALTERATION, OBLITERATION, MUST BE CORRECTED IN BLUE OR BLACK INK. OTHER ANSWERS BEING REQUIRED OR THAT YOU STATE THE VEHICLE AND LIEN IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE, OR PROVIDING FALSE STATEMENT, MAY SUBJECT TO PENALTIES.

D-4

# OHIO CERTIFICATE OF TITLE

## STATE OF OHIO

**ORIGINAL**

| | |
|---|---|
| **ISSUING COUNTY** BUTLER | **TITLE No.** 09 0597 5357 |
| **ISSUING TITLE OFFICE #** 0904 | **ISSUE DATE** 04/27/2022 |
| **RESIDENT COUNTY** HAMILTON | |

| IDENTIFICATION NUMBER | YEAR | MAKE | MAKE DESCRIPTION | MODEL DESCRIPTION | BODY TYPE |
|---|---|---|---|---|---|
| 1C4BJWDG4FL619028 | 2015 | JEEP | JEEP | WRANGLER UNLIMI | SW |

| MILEAGE | MILEAGE NOTATION | PURCHASE PRICE | TAX |
|---|---|---|---|
| 122,464 | ACTUAL | $0.00 | $0.00 |

**CONVERSION**

PLATE NO. _JND 9353_

**EVIDENCE**
KY-190070590005

LICENSE EXP. _3/16_

**COMMENTS**

TRUCK WEIGHT _____

REGISTRAR OF MOTOR VEHICLES

**NOTATION(S)**

**OWNER(S)**
CHASTITY ELLISON

6217 CEDARBLUFF CT
CINCINNATI, OH 45233

**PREVIOUS OWNER(S)**
WAYNE ELLISON

436 GENERAL DR
FT WRIGHT, KY

WITNESS MY HAND AND OFFICIAL SEAL THIS 27TH DAY OF APRIL, 2022

%217321706



%217321706



MARY L SWAIN
CLERK OF COURTS                  G          KMB

TITLE DOCUMENT CONTAINS OHIO WATERMARK WHICH IS VISIBLE WHEN HELD TO LIGHT

ERASURES AND ALTERATIONS VOID THIS TITLE

D. S

**PLAN: THE FIFTH THIRD BANCORP 401(K) SAVINGS PLAN**



EXHIBIT
E

CORRECTED (if checked)

| PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | 1 Gross distribution $160,930.30 | OMB No. 1545-0119 | Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. |
|---|---|---|---|
| EMPOWER TRUST COMPANY LLC PO BOX 173764 D999 DENVER, CO 80217-3764 1-877-215-4015 | 2a Taxable amount $160,875.66 | **2023** Form 1099-R | |
| | 2b Taxable amount not determined ☐   Total distribution ☒ | | Copy B Report this income on your federal tax return. If this form shows federal income tax withheld in box 4, attach this copy to your return. |
| PAYER'S TIN 84-1455663 | RECIPIENT'S TIN ***-**-9774 | 3 Capital gain (included in box 2a) $0.00 | 4 Federal income tax withheld $32,175.13 |
| RECIPIENT'S name, street address (including apt. no.), city or town, state or province, country, and ZIP or foreign postal code CHASTITY ELLISON 6217 CEDARBLUFF COURT CINCINNATI, OH 45233 | 5 Employee contributions/Designated Roth contributions or insurance premiums $54.64 | 6 Net unrealized appreciation in employer's securities $0.00 | |
| | 7 Distribution code(s) 2   IRA/SEP/ SIMPLE ☐ | 8 Other $0.00   % | This information is being furnished to the IRS. |
| | 9a Your percentage of total distribution % | 9b Total employee contributions $0.00 | |
| | 14 State tax withheld $0.00 | 15 State/Payer's state no. OH/52519724 | 16 State distribution $160,875.66 |
| 10 Amount allocable to IRR within 5 years | 11 1st year of desig. Roth contrib. | 12 FATCA filing requirement ☐ | 17 Local tax withheld | 18 Name of locality | 19 Local distribution |
| Account number (see instructions) 150093 | | 13 Date of payment | | | |

Form 1099-R          www.irs.gov/Form1099R          Department of the Treasury-Internal Revenue Service

CORRECTED (if checked)

| PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | 1 Gross distribution $160,930.30 | OMB No. 1545-0119 | Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. |
|---|---|---|---|
| EMPOWER TRUST COMPANY LLC PO BOX 173764 D999 DENVER, CO 80217-3764 1-877-215-4015 | 2a Taxable amount $160,875.66 | **2023** Form 1099-R | |
| | 2b Taxable amount not determined ☐   Total distribution ☒ | | Copy C For Recipient's Records |
| PAYER'S TIN 84-1455663 | RECIPIENT'S TIN ***-**-9774 | 3 Capital gain (included in box 2a) $0.00 | 4 Federal income tax withheld $32,175.13 |
| RECIPIENT'S name, street address (including apt. no.), city or town, state or province, country, and ZIP or foreign postal code CHASTITY ELLISON 6217 CEDARBLUFF COURT CINCINNATI, OH 45233 | 5 Employee contributions/Designated Roth contributions or insurance premiums $54.64 | 6 Net unrealized appreciation in employer's securities $0.00 | |
| | 7 Distribution code(s) 2   IRA/SEP/ SIMPLE ☐ | 8 Other $0.00   % | This information is being furnished to the IRS. |
| | 9a Your percentage of total distribution % | 9b Total employee contributions $0.00 | |
| | 14 State tax withheld $0.00 | 15 State/Payer's state no. OH/52519724 | 16 State distribution $160,875.66 |
| 10 Amount allocable to IRR within 5 years $0.00 | 11 1st year of desig. Roth contrib. | 12 FATCA filing requirement ☐ | 17 Local tax withheld | 18 Name of locality | 19 Local distribution |
| Account number (see instructions) 150093 | | 13 Date of payment | | | |

Form 1099-R          (keep for your records)          www.irs.gov/Form1099R          Department of the Treasury-Internal Revenue Service

CORRECTED (if checked)

| PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | 1 Gross distribution $160,930.30 | OMB No. 1545-0119 | Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. |
|---|---|---|---|
| EMPOWER TRUST COMPANY LLC PO BOX 173764 D999 DENVER, CO 80217-3764 1-877-215-4015 | 2a Taxable amount $160,875.66 | **2023** Form 1099-R | |
| | 2b Taxable amount not determined ☐   Total distribution ☒ | | Copy 2 File this copy with your state, city, or local income tax return, when required. |
| PAYER'S TIN 84-1455663 | RECIPIENT'S TIN ***-**-9774 | 3 Capital gain (included in box 2a) $0.00 | 4 Federal income tax withheld $32,175.13 |
| RECIPIENT'S name, street address (including apt. no.), city or town, state or province, country, and ZIP or foreign postal code CHASTITY ELLISON 6217 CEDARBLUFF COURT CINCINNATI, OH 45233 | 5 Employee contributions/Designated Roth contributions or insurance premiums $54.64 | 6 Net unrealized appreciation in employer's securities $0.00 | |
| | 7 Distribution code(s) 2   IRA/SEP/ SIMPLE ☐ | 8 Other $0.00   % | |
| | 9a Your percentage of total distribution % | 9b Total employee contributions $0.00 | |
| | 14 State tax withheld $0.00 | 15 State/Payer's state no. OH/52519724 | 16 State distribution $160,875.66 |
| 10 Amount allocable to IRR within 5 years $0.00 | 11 1st year of desig. Roth contrib. | 12 FATCA filing requirement ☐ | 17 Local tax withheld | 18 Name of locality | 19 Local distribution |
| Account number (see instructions) 150093 | | 13 Date of payment | | | |

Form 1099-R          www.irs.gov/Form1099R          Department of the Treasury-Internal Revenue Service

## DECLARATION IN SUPPORT OF OBJECTION TO CLAIM 9-1

I, the undersigned, declare as follows:

1. I am the debtor in the above-captioned bankruptcy case and am submitting this declaration in support of my objection to Claim 9-1 filed by or on behalf of Wayne Ellison.

2. The amount listed in Claim 9-1 is disputed and not supported by a valid final judgment. The claim includes a repayment demand that is based on a QDRO (Qualified Domestic Relations Order) that was entered without proper tracing of the marital and non-marital portions of the account. No expert report was completed prior to submission, and the amount was not verified through a complete calculation.

3. The state court later acknowledged that tracing had not been completed and ordered a tracing after funds were already frozen and after enforcement was attempted. The order leading to the claim is interlocutory, as confirmed by the Kentucky Court of Appeals in correspondence acknowledging that the order was not final or appealable.

4. I paid taxes on the QDRO distribution, including $32,175.13 in federal withholding alone, and used a portion of the funds for legal fees and necessary living expenses. I also purchased a used vehicle to replace a non-functioning one. These uses were necessary at the time and made before the freeze order was served.

5. The remaining balance of approximately $79,758.78 was frozen and placed in escrow, where it remains undistributed. I disclosed these funds on my bankruptcy schedules and have requested that the bankruptcy court determine whether the claim is enforceable.

6. The state court ruling relied upon by the claimant misapplied Kentucky Rules of Civil Procedure 60.01 and 60.02 and did not establish a valid or final repayment obligation. I respectfully request that the bankruptcy court disallow this claim under 11 U.S.C. § 502(b)(1) as unenforceable under applicable nonbankruptcy law.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 24, 2025.

Debtor (Chastity Ellison)

EXHIBIT
F

COMMONWEALTH OF KENTUCKY KENTON FAMILY
COURT, SECOND DIVISION CASE NUMBER 21-CI-1554

IN RE: THE MARRIAGE OF:

WAYNE ELLISON

V.

CHASTITY ELLISON

PETITIONER

RESPONDENT

# ORDER ENTERING STATUS QUO ORDER, SETTING HEARING

This matter is before the court on Petitioner's Emergency Motion To Freeze certain assets and to

set aside and modify certain Orders.

The Court ORDERS that neither party shall sell, encumber, gift, bequeath or in any manner

transfer, convey or dissipate any property, cash, stocks or other assets currently in their possession or

control of another person without an order of this court specifically including any such asset arising in

any way from or through the Qualified Domestic Relations Order entered herein on January 11, 2023

All issues raised in the Moton filed February 14, 2023 shall be heard by the court in open court on

Wednesday, March 8, 2023 at 8:30 a.m. in courtroom 5A.

IT IS SO ORDERED this 15th day of February, 2023.



EXHIBIT
G

Copies to:

Hon. Jacqueline S. Sawyers

Chastity Ellison
6217 Cedarbluff Court
Cincinnati, OH 45233

(Courtesy copy to Hon. Laura Ward)

# Sc
# ho
# o

Terri King Schoborg, Judge
Kenton Family Court

NOT ORIGINAL

ENTERED
KENTON CIRCUIT/DISTRICT COURT

JUL 25 2023

JOHN C. MIDDLETON        D.C.

12/01/2023 03:39:59

**COMMONWEALTH OF KENTUCKY**
**KENTON FAMILY COURT, SECOND DIVISION**
**CASE NUMBER 21-CI-1554**

IN RE: THE MARRIAGE OF:

WAYNE ELLISON                                    PETITIONER

    VS

CHASTITY ELLISON                                 RESPONDENT

### ORDER

    This case came before the Court on Petitioner's Emergency Motion to Freeze Non-Marital Assets Transferred Pursuant to a Qualified Domestic Relations Order entered on January 11, 2023, and a Motion to Set Aside and Modify the Qualified Domestic Relations Order to Be Consistent with The Parties' Intentions as Stated in Their Separation Agreement. Upon the filing of the Motion this Court issued an order freezing any funds transferred pursuant to the Qualified Domestic Order. The Motion to set aside the QDRO was filed on February 14, 2023, and Order freezing the funds was entered on February 15, 2023.

    Testimony was taken on the motion on April 10, 2023, June 5 and June 26, 2023, and based upon the testimony of the parties, witnesses, evidence presented, and submissions of the parties, this Court makes the following Findings of Facts and Conclusions of Law in support of the Order.

### FINDINGS OF FACT

1. The evidence concerning the transactions and communications which took place between the attorneys and their clients regarding the drafting of the separation agreement and the subsequent QDRO are largely not in dispute.

2. The parties were married on March 29, 2019.

3. The Petitioner filed a dissolution action and the parties participated in a mediation which led to an agreement memorialized in a Separation Agreement that was filed with the Court on April 12, 2022. (Petitioner's Exhibit 2).

4. At the time the Dissolution Petition was filed the Petitioner was represented by Donald Nageleisen,

1



EXHIBIT

H

NOT ORIGINAL

DOCUMENT

M

12/01/2023 03:39:59

Esq. And Respondent was represented by Attorney Laura Oldfield, Esq.

82094

5. Attorney Nageleisen's representation of the Petitioner was uninterrupted until October 19, 2022, and Attorney, Oldfield 's representation of the Respondent continued until after the entry of the QDRO on January 11, 2023.

6. Paragraph 5 of the Separation Agreement addressed the division of the Petitioner's 401K with Fifth Third Bank. (Petitioner's Exhibit 2)

7. Paragraph 5 set forth that the 401K would be divided pursuant to a QDRO and that said QDRO would be prepared by Eileen Zell, Esq. (Petitioner's Exhibit 2).

8. The parties also agreed to share the fees of Eileen Zell, Esq. and the costs of dividing the 401K equally. (Petitioner's Exhibit 2).

9. Division of the 401K was to be as follows; "... the marital portion shall be divided *[sic]* equally between the parties, plus or minus any investment gains or losses. The marital portion shall be defined as the benefit accrued from the date of the marriage through the date of divorce." (Petitioner's Exhibit 2).

10. Attorney Nageleisen and Attorney Oldfield knew at the time of the mediation that there would be a need for tracing to separate the marital portion of the 401K from the non-marital portion.

11. On May 4, 2022, Attorney Oldfield contacted Eileen Zell's office via email to advise that she had a new QDRO project. (Petitioner's Exhibit 4).

12. On May 5, 2022, Attorney Oldfield advised Attorney Nageleisen, via email, that she had contacted the office of Eileen Zell regarding the QDRO. She indicated she had submitted most of the necessary documents and would "take care of the client intake information." She requested that Attorney Nageleisen provide her with the summary plan documents and "half the fee." (Petitioner's Exhibit 4).

13. Jordan Neff from Eileen Zell's office acknowledged Attorney Oldfield's May 4, 2022, email with an email response sent on May 5, 2022, at 11:00 AM. (Petitioner's Exhibit 4)

14. Attorney Nageleisen contacted Eileen Zell's office about the QDRO. He provided Ms. Zell with a check for $250.00 and the Summary Plan Documents for the 401K under cover letter dated June 13, 2022. (Petitioner's Exhibit 3)

15. Eileen Zell charged $500.00 to prepare a QDRO for the parties. (Petitioner's Exhibit 3)

16. Eileen Zell's contract indicated that she charged $365.00 per hour. (Petitioner's Exhibit 3).

17. The Separation Agreement and an intake form were provided to Eileen Zell's office.

18. The parties each submitted $250.00 to Eileen Zell as payment for their respective portions of the QDRO preparation fee as set forth in the Separation Agreement.

19. Eileen Zell's paralegal, Jordan Neff, contacted Attorney Oldfield via email on June 22, 2022, to advise her of the need for tracing in order to divide the 401K according to the terms of the Separation Agreement. (Petitioner's Exhibit 4).

20. Mr. Neff also advised that there would be an additional fee for the tracing service and offered to prepare an hourly retainer agreement if the parties wished. (Petitioner's Exhibit 4).

21. Attorney Oldfield advised Petitioner's counsel of Ms. Zell's need to perform a calculation to properly determine how to divide the 401K account via email sent on June 23, 2022, at 2:37 PM. (Petitioner's Exhibit 4).

22. Attorney Nageleisen acknowledged the email from Attorney Oldfield by replying via email on June 23, 2022, at 2:37 PM. (Petitioner's Exhibit 4).

23. On August 31, 2022, at 1:44 PM, Jordan Neff advised Attorney Nageleisen that the Petitioner had delivered a letter from Attorney Nageleisen and a check from Petitioner's personal account to Eileen Zell's office. He further advised that the office cannot accept checks from non-attorney parties and that his records showed no amount due at that time while noting that an account trace may be requested. Neff further offered to provide an image of the voided check to Attorney Nageleisen. (Petitioner's Exhibit 5).\

24. On August 31, 2022, at 2:38 PM Eileen Zell sent an email to the attorneys for both parties informing them she had received $500.00 for drafting the QDRO, confirmed Jordan Neff had been in contact regarding performing the account tracing "as an hourly matter, with a minimum three-hour refundable retainer pending an estimate." Ms. Zell noted she had not heard back about the account tracing. She stated her office had received a check from the Petitioner and that they had rejected it based on their policy that only checks from law firm accounts were accepted and the check was voided. (Petitioner's Exhibit 5).

25. August 31, 2022, at 2:39 PM Attorney Oldfield, via an email to Eileen Zell copied to Attorney Nageleisen, responded to the earlier email from Ms. Zell that the parties want to do the tracing, Attorney Nageleisen would provide Attorney Oldfield with his client's check and that Attorney Oldfield would "finish everything up." (Petitioner's Exhibit 5).

26. On September 2, 2022, Jordan Neff sent an email to Attorneys Oldfield and Nageleisen to advise that the retainer to begin the account trace would be $1095.00. (Petitioner's Exhibit 5).

27. On September 6, 2022, at 3:42 PM Attorney Oldfield contacted Attorney Nageleisen via email with an account trace fee breakdown, including the total retainer requested by Eileen Zell, $1095.00, and the amount each party would be responsible for, $547.50, pursuant to the Separation Agreement.

**DOCUMENT**                                                                              **NOT ORIGINAL**

                                                                              12/01/2023 03:39:59
**PM**

(Petitioner's Exhibit 5).                                                         82094

28. Attorney Nageleisen requested Attorney Oldfield inform him how much she had received from him via email on September 6, 2022, at 3:46 PM. (Petitioner's Exhibit 5).

29. Attorney Oldfield replied, via email on September 6, 2022, at 3:47 PM, informing him she had yet to receive anything. (Petitioner's Exhibit 5)

30. Attorney Nageleisen responded on September 6, 2022, at 3:52 via email, stating he thought "we sent $250 before ..." (Petitioner's Exhibit 5).

31. Attorney Oldfield responded on that date via email at 3:59 PM, that the $250 that had been tendered previously was for the "original QDRO." She further advised that the fee being discussed was for tracing, which was separate. (Petitioner's Exhibit 5).

32. Attorney Nageleisen responded on September 6, 2022, at 4:05 PM by again asking how much Attorney Oldfield had received from him. (Petitioner's Exhibit 5)

33. On September 29, 2022, at 1:44 PM Attorney Oldfield advised Attorney Nageleisen that she had received his check in the amount of $297.50. She further informed him that the amount due was $547.50 and that she would forward the funds to Eileen Zell when he provided the additional $250.00 to cover his client's share of the account tracing fee. Attorney Oldfield also indicated that the Respondent had paid her share of the tracing fee several weeks prior. (Petitioner's Exhibit 5).

34. At 1:57 Attorney Nageleisen responded via email and expressed his frustration with the process, recounting that his client had paid $250.00 and then an additional $297.50. (Petitioner's Exhibit 5).

35. On September 29, 2022, at 1:58 PM Attorney Nageleisen responded via email by stating that he had previously paid $250 at the beginning and now had paid an additional $297.50 as requested. He further expressed his frustration with communicating with Eileen Zell's office. (Petitioner's Exhibit 5).

36. At 2:09 PM on September 29, 2022, Attorney Oldfield responded via email explaining that the fee for the QDRO and the fee for the account tracing are two separate fees. She further suggested that the parties could either pay for the account tracing or simply have a QDRO prepared without the additional account tracing and simply use the dates of marriage and divorce when calculating the division of the 401K account. (Petitioner's Exhibit 5).

37. Attorney Nageleisen responded via email on October 4, 2022, at 8:27 AM stating that he understood that there are two separate things and he understood that $250.00 was previously paid. He acknowledged that he had been informed that the $297.50 was the wrong amount and requested another breakdown of what his client owed and what his client was receiving credit for having already paid. He expressed his frustration with Eileen Zell and stated that he knew Attorney Oldfield and

Eileen Zell were good friends. He stated he needed "answers asap or I will have to file motions here." (Petitioner's Exhibit 5).

38. On October 4, 2022, at 3:43 PM Attorney Oldfield responded via email stating that she was waiting to hear from her client and told Attorney Nageleisen to file a motion if he thought it necessary. She went on to note that answers to each of Attorney Nageleisen has been previously addressed in the same email thread and that she was certain her client was tired of paying her to answer the same questions repeatedly. (Petitioner's Exhibit 5).

39. October 12, 2022, at 3:31 PM another email was sent from Attorney Oldfield to Attorney Nageleisen. In this email she advised him that Eileen Zell informed her that Attorney Nageleisen was asking the same questions he had previously posed to Attorney Oldfield and that she would not respond to his inquiries. She further advised him that too much time had been wasted trying to have the additional calculations performed and that she had requested the QDRO be prepared without their inclusion. (Petitioner's Exhibit 5).

40. Under questioning at trial, Attorney Nageleisen stated he did not understand the second paragraph of Attorney Oldfield's email of October 12, 2022, he did not provide a written response to the email, he would have placed a telephone call to her. He did not state that he in fact did call her. He did not send a letter, email or other written communication to Attorney Oldfield objecting to her request for the QDRO to be drafted without the necessary calculation.

41. Mr. Nageleisen testified that he could not get Ms. Zell or Ms. Oldfield to return his phone calls inquiring about Ms. Zell's fee and the status of the work Ms. Zell was to be performing. Ultimately, due to the lack of cooperation from Ms. Zell and Ms. Oldfield, the record reflects that Mr. Nageleisen filed a Motion to Withdraw as counsel of record for the Petitioner on October 19, 2022. The record reflects that Mr. Nageleisen was permitted to withdraw as counsel for the Petitioner in this case by Order entered on November 4, 2022.

42. Attorney Nageleisen did not inform the Petitioner of the October 12, 2022, email from Attorney Oldfield regarding having the QDRO prepared without tracing.

43. Attorney Nageleisen did not recall having a specific conversation with Attorney Sawyers regarding tracing when she began representing the Petitioner.

44. On October 19, 2022, at 10:51 AM Attorney Nageleisen advised Attorney Oldfield that he had been fired by his client and he had filed a motion to withdraw from the matter. He requested that his check be returned to him. (Petitioner's Exhibit 5

45. Attorney Nageleisen testified that he quit.

**DOCUMENT**                                                                 **NOT ORIGINAL**

**PM**                                                               12/01/2023 03:39:59

46. Attorney Oldfield sent Petitioner a letter and draft of the proposed QDRO on November 16, 2022. The correspondence indicated the proposed QDRO was prepared by Eileen Zell. (Respondent's Exhibit E)

47. Petitioner replaced Attorney Nageleisen with Jacqueline S. Sawyers, Esq. Attorney Sawyers sent Attorney Oldfield a detailed email, copying Eileen Zell, on November 28, 2022 at 3:49 PM introducing herself as Petitioner's new counsel, requesting all future communication be directed to her, acknowledging she had received a letter from Attorney Oldfield addressed to Petitioner that included a copy of the proposed QDRO, Petitioner had advised her he had been trying for months to get the QDRO entered, and that he was happy to have draft of the QDRO to review with his attorney. (Respondent's Exhibit D).

48. In the same email Attorney Sawyers questioned who drafted the QDRO since the document indicated that it had been drafted by Attorney Oldfield though the accompanying correspondence stated it had been prepared by Eileen Zell, Attorney Sawyers referenced the Separation Agreement's clause providing that the QDRO would be prepared by Ms. Zell, she also noted her client had paid for Ms. Zell to prepare the QDRO though she was unsure of the amount he had paid, she states that if Attorney Oldfield had prepared the QDRO her client was entitled to a refund, and she also requested an accounting of monies paid by her client for the QDRO preparation. (Respondent's Exhibit D).

49. The Attorney Sawyers email of November 28, 2022, went on to point out the date of marriage in the proposed QDRO was incorrect, she questioned the use of certain terms in the proposed QDRO, she opposed certain language in paragraph 14 of the proposed QDRO, and then stated the rest of the document "appears to be in order ..." (Respondent's Exhibit D).The Petitioner acknowledged his signature on the QDRO that was filed on January 11, 2023.Petitioner testified that he signed the QDRO at the office of Attorney Sawyers, his attorney at that time. He also reviewed the QDRO with his attorney. He felt rushed to sign the document by Attorney Sawyers.

50. The QDRO was tendered to the Court and entered by the Court on January 11, 2023.

51. Evidence presented on behalf of the Petitioner at the hearing established that the value of the Petitioner's 401K as of the date of the parties' marriage was $744,704.89.

52. The Petitioner testified that he continued to contribute to his 401K account through his employment with Fifth Third Bank during the parties' marriage, and his employer, Fifth Third Bank, additionally made matching contributions up to a certain percentage.

53. The Petitioner presented evidence reflecting that his contributions to his 401K account during the parties' marriage were $57,347.50, and his employer contributed the additional sum of $18,555.80 to

NOT ORIGINAL

12/01/2023 03:39:59

the Petitioner's 401K account during the parties' marriage.

82094

54. The Court, therefore, finds pursuant to the Separation Agreement and Decree of Dissolution that the marital portion of the Petitioner's 401K which should have been divided between the parties was the sum of $75,903.30, plus any increase or appreciation in the value of those marital contributions during the parties' marriage.

55. There is no clear explanation for the discrepancies in the numbers.

56. An account tracing was never performed in connection with his 401K to determine the marital and non-marital portions.

57. The Court finds that a calculation needs to be made by a qualified expert to determine the actual increase or appreciation in the value of the marital contributions to the Petitioner's 401K during the parties' marriage.   The Petitioner presented testimony and evidence regarding an approximation of the rate of return on the marital portion of his 401K account.  However, the Petitioner acknowledged that a calculation needs to be made to determine the exact value of the marital portion of his 401K subject to division with the Respondent.

58. Rodney Troyan, Esq. testified that the marital portion of the 401k would be less than estimate prepared by the Petitioner (Respondent's Exhibit X).

59. There was some discrepancy in the testimony of the parties regarding the actual amount that the Respondent received from the Petitioner's 401K account.  The Petitioner testified that the sum of $163,789.97 was deducted from his 401K account on February 3, 2023. The Respondent testified that she received the sum of $160,930.30 before federal taxes were deducted.

60. There is no clear explanation for the discrepancies in the numbers.

61. Rodney D. Troyan, Esq., was qualified as an expert and testified that he has been an attorney for nearly 22 years, is admitted to the bars of Florida, New York, New Jersey, Washington D.C. and various Federal Jurisdictions, has prepared over 185,000 QDRO's in his career, he has prepared QDRO's in 49 states, his practice is limited to QDRO preparation, interpretation, ERISA and related issues, and the Plan Administrator followed the language of the QDRO correctly.

62. Rodney D. Troyan, Esq. discussed that a Separation Agreement typically does not rise to the level of a Domestic Relations Order and that the Separation Agreement normally controls the contents of a QDRO.

63. Rodney D. Troyan Esq. testified that the plan is not authorized by ERISA to accept any repayment of funds, the Plan Administrator had no right or duty to inspect the QDRO to determine if it complied with the Separation Agreement, and the Plan Administrator is prohibited from looking beyond the

QDRO.                                                                                    82094

64. The expert explained that the marital portion referred to in the Separation Agreement is the same as the coverture period, which is the date of marriage to the date of divorce in Kentucky.

65. The expert provided that the Separation Agreement was clear in using the term accrual period and that it meant the earned portion, the date of marriage value should have been zero, and the accrual should have been the amount added to the account during the marriage through contributions and adjusted for gains and losses. To be consistent with the Separation Agreement, the QDRO would have needed to exclude the gains and losses on the pre-marital component of the account.

66. The expert also stated that a plan, such as the one the in which the Petitioner participates, would not perform account tracing or statement analysis.

67. The QDRO signed by the parties and their respective counsel did not comply with the terms of the Separation Agreement.

68. The QDRO was approved by the plan administrator and the QDRO was consistent with the Retirement Equity Act and ERISA and pursuant to the QDRO the funds were transferred to the Respondent.

69. There was insufficient evidence to determine that the Respondent spent any of the money distributed to her from the 401K after receiving the Court's Order of February 15, 2023.

70. The Respondent testified that she received an electronic funds transfer in the amount of $128,755.17 from Empower, who is the company that administers and manages the Petitioner's 401K account on February 10, 2023. Ms. Ellison testified that she made the request for the complete withdrawal of all the funds that she received from the Petitioner's 401K account so that she could invest in real estate.

71. The Respondent Ms. testified that the sum of $32,175.13 was withheld for federal taxes, but that she has not yet paid any State taxes on the sums she withdrew and there was no penalty assessed to her for the withdrawal of the funds she received from the Petitioner's 401K account.

72. The Respondent testified that she used the funds she received from the Petitioner's 401K account to purchase a new car and to "pay bills" that she had outstanding. But the only amount that she could provide with specificity in her testimony on cross-examination was that she paid the sum of $25,955.00 for her new car that she purchased on February 15, 2023.

73. The Respondent stated that she spent $23,000.00 paying outstanding bills but could not specify or refused to provide any specifics as to what those bills were. The Respondent testified that she made all those expenditures prior to February 18, 2023, when she became aware of this Court's Order of February 15, 2023.

74. Pursuant to the Motion filed on behalf of the Petitioner on February 14, 2023, this Court entered an

**DOCUMENT**

NOT ORIGINAL

12/01/2023 03:39:59
PM

Order on February 15, 2023, freezing the assets either party received from the Petitioner's 401K
account

75. Motor vehicle taxes are assessed to the owner of the vehicle on January 1 of the year they are due in
Kentucky.

76. Petitioner was the owner of the Jeep Wrangler on January 1, 2022.

77. The Kentucky Department of Revenue provides that the owner of a motor vehicle on January 1 is
responsible for the payment of the taxes on that vehicle.

## APPLICABLE LAW

KRS 403 0.18 (2) provides that the terms of the separation agreement are binding on the court
unless it finds that the agreement is unconscionable.

KRS 403.250 provides that provisions as to property disposition may not be revoked or modified,
unless the court finds the existence of conditions that justify the reopening of a judgment under
the laws of this state.

Rule 60.01 of the Kentucky Rules of Civil Procedure provides as follows:
Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from
oversight or omission may be corrected by the court at any time on its own initiative or on the
motion of any party and after such notice, if any, as the court orders.

Rule 60.02 of the Kentucky Rules of Civil Procedure provides as follows:
On motion a court may, upon such terms as are just, relieve a party or his legal representative from
its final judgment, order or proceeding upon the following grounds: (a) mistake, inadvertence,
surprise or excusable neglect.

Whitaker v. Associated Credit Services Inc., 946 F. 2d 1222(6th Circuit 1991)
The court has the authority pursuant to rule 60.01 to correct even a consent judgment if there was
an error that did not reflect the party's agreement.

Martin v Martin Ky App., In an unpublished opinion which involved a claim by the Wife that the

DOCUMENT

NOT ORIGINAL

12/01/2023 03:39:59

QDRO did not match the intention of the parties in their agreement. The court in that case found the parties agreement to be ambiguous and construed the property settlement agreement against the drafter finding no basis for amendment of the QDRO. 2019 WL 1578675 Ky App. (2004)

<u>Willis v. Willis</u> Ky App. 362 S.W. 3d 3 372 (2012) the court held that the trial court could not modify the terms of a QDRO that was consistent with the property settlement agreement absent a finding of unconscionability.

A QDRO can only convey rights agreed upon by the parties in their underlying stipulation of settlement (see <u>McCoy v. Feinman, 99 N.Y.2d 295, 304, 755 N.Y.S.2d 693, 785 N.E.2d 714; Kraus v. Kraus, 131 A.D.3d at 100, 14 N.Y.S3d 55; Berardi v. Berardi, 54 A.D.3d 982, 985, 865 N.Y.S.2d 245</u>). Courts "cannot reform an agreement to conform to what it thinks is proper, if the parties have not assented to such a reformation" (<u>Cohen–Davidson v. Davidson, 291 A.D.2d 474, 475, 740 N.Y.S.2d 68; see Tamburello v. Tamburello, 113 A.D.3d 752, 978 N.Y.S.2d 864; Cappello v. Cappello, 286 A.D.2d 360, 729 N.Y.S.2d 175; Tinter v. Tinter, 96 A.D.2d 556, 557, 465 N.Y.S.2d 238</u>).

<u>Wilson v. Wilson,</u> 878 N.E. 2d 16 (OH App.) "a QDRO implements a trial court 's decision of how a pension is to be divided incident to a divorce or dissolution. "a QDRO does not in any way constitute a further adjudication on the merits of the pension division as its sole purpose is to implement the terms of the divorce decree id at 16****. Indeed, a QDRO may not vary, enlarge, or diminish the relief that the court granted in the divorce decree since that order which provided for the QDRO has since become final". Id.

In <u>Hohman v. Hohman,</u> (an unpublished opinion), WL 1535619 (Ky. App 2004) the Kentucky Court of Appeals considered whether amounts that were paid under a judgment that was later overturned on appeal required restitution of amounts improperly paid. The Court of Appeals held that the refusal of the trial court on remand to require restitution was error. the court held that the reversal the of courts earlier order did not create an inequity and the wise use of money for living expenses was not a basis for refusal to grant restitution. The appellant court also addressed the reallocation of the marital property award in order to facilitate restitution and ruled that unless the trial court found the separation agreement to be unconscionable it was bound by the agreement.

OCUMENT

M

KRS 132.220 provides that all taxable property, and all interests therein, shall be "assessed and valued as of January 1 of each year" unless otherwise specifically provided by law. The Kentucky Department of Revenue's published policy states that the owner of a vehicle on January 1 is responsible for the property taxes on the vehicle. The evidence establishes that the Petitioner was the owner of the Jeep Wrangler on January 1, 2022.

## CONCLUSION

The issue before the Court concerns whether the QDRO that has been submitted and approved and executed by the Plan Administrator should be set aside or modified as it relates to the parties to this proceeding. Under Federal Law the QDRO was accepted by the Plan Administrator as being valid and this Court has no authority over the Plan Administrator. The Plan Administrator has no duty to examine the terms of the Judgment upon which the QDRO is based. Since the facts are largely not in dispute the issues presented are questions of law.

The court in deciding the issue first recognizes that a valid property settlement agreement was negotiated by the parties and became a part of the final decree of dissolution entered in this case. Second, the court must recognize that under the provisions of that judgment the parties were to enlist the services of an "expert" to draft the provisions of the QRDO in conformity with the judgment. This did not occur. The QDRO that was drafted by Eileen Zell, Esq. did not match the Separation Agreement that was a Judgment of the Court. When the Court signed off on the QDRO there was an assumption that the document was in conformity with the Judgment of the Court. The evidence established that the QDRO was inconsistent with the Separation Agreement and the final Decree. The Court concludes that the entering of the QDRO which was inconsistent with the terms of the Judgment was an error and the QDRO should be set aside Nunc Pro Tunc pursuant to 60.01. The only other option was that the QDRO was an Agreed Judgement modifying the Final Decree and the court is unable to find a legal basis to support such an agreed judgment modifying the decree. There was no ambiguity in the agreement.

Absent an Agreed Order modifying the Decree, the QDRO entered by the court was in error and with respect to the parties to this action should be deemed void and a nullity. The QDRO is the vehicle for accomplishing the Decree which incorporated the Settlement Agreement of the parties. It is worth noting that there was no Motion to Modify the Decree nor did the QDRO contain any language that the parties intended a modification of the terms contemplated in the Separation Agreement.

11

1

NOT ORIGINAL

DOCUMENT

12/01/2023 03:39:59

PM

In the present matter the Respondent argues that the unanswered email from Attorney Oldfield

82094

was evidence that the parties knowingly modified the terms of the Decree. The Court finds insufficient evidence of an intention to modify the Decree. The parties, as well as their counsel, had agreed that Eileen Zell an attorney specializing in QDRO's would draft the QDRO in order to assure that it was done properly and consistently with the Separation Agreement and Decree in the case. The Court is unable to explain why that did not occur. If the parties intended to modify the Separation Agreement this needed to be presented to the Court, with a tendered order clearly stating that the parties were seeking to modify the Decree.

**WHEREFORE,**

1. Rule 60.01 of the Kentucky Rules of Civil Procedure provides in part as follows:

   > Clerical mistakes in judgments, orders or other parts of the
   > record and errors therein arising from oversight or omission
   > may be correct by the court at any time of its own initiative
   > or on the motion of any party and after such notice, if any,
   > as the court orders.

2. Based on the totality of the evidence presented, the Court finds as a matter of law that the Petitioner has established the necessary criteria for the Court to entertain his pending Motion filed on February 14, 2023, based on Rules 60.01.

3. The Court concludes as a matter of law that the language used in the Qualified Domestic Relations Order by the Petitioner, by his counsel and by the court entered by this Court on January 11, 2023, was clearly an error.

4. The Court concludes as a matter of law that the Qualified Domestic Relations Order in question is not a separate "contract" or agreement between the parties which serves to alter the language and express intent of the parties set forth in the Separation Agreement.

5. The Qualified Domestic Relations Order is merely the mechanism by which the parties' intentions as stated in their Separation Agreement for the division of the Petitioner's 401K account should have been effectuated and implemented.

6. The Qualified Domestic Relations Order cannot be rescinded once it has been accepted by the Plan Administrator.

7. The Court concludes as a matter of law that the Respondent should not be permitted to have the windfall of language which should have never been included in the entered Qualified Domestic

12

DOCUMENT

PM

NOT ORIGINAL

12/01/2023 03:39:59

Relations Order as such language is contrary to the parties' Separation Agreement. 82094

8. It is the opinion of this Court that the Respondent was unjustly enriched by the execution of the QDRO which the court declares void as to the parties. The Court concludes as a matter of law that a determination needs to be made as to the value of the Petitioner's non-marital interest in his 401K account, including the appreciation in the value of those funds. Such calculation should be performed by someone other than Eileen Zell with expertise in that area.

9. The Motion for Contempt filed on behalf of the Petitioner is overruled, but the Respondent is ordered to reimburse the Petitioner the sum of $212.44 for 50% of the cost of the 2022 car taxes on the Jeep Wrangler assigned to the Respondent in the parties' Separation Agreement.

10. The Respondent's and the Petitioner's pending Motions for legal fees are overruled.

## JUDGMENT AND ORDERS

**THEREFORE**, having entered the foregoing Findings of Fact and Conclusions of Law, the Court hereby enters the following Judgment and Orders:

1. The Motion filed on behalf of the Petitioner on February 14, 2023, is **SUSTAINED** and QDRO signed by the Court is set aside *nunc pro tunc*.

2. Within ten (10) days from the entry of this Order, the parties are directed to agree upon an expert to calculate the value of the Petitioner's non-marital interest in his 401K account and similarly the value of the marital interest in the Petitioner's 401K account, including the appreciation in value for both the Petitioner's non-marital interest and the marital interest.

3. The Petitioner and Respondent shall share the cost of the services of such expert.

4. Upon the determination of the value of the marital interest in the Petitioner's account which should have been equally divided between the parties, the Petitioner shall be entitled to a Lump Sum Judgment in the amount of the difference between fifty percent (50%) of the marital portion which the Respondent should have received and the amount that was transferred by QDRO to the Respondent.

5. To effectuate such Lump Sum Judgment, the balance in the escrow account held by counsel for the parties in the amount of $79,759.78, including any interest accumulated thereon, shall be paid directly to counsel for the Petitioner within ten (10) days from the entry of this Order. The Respondent is further ordered to reimburse the Petitioner the sum of $212.44 for the 2022 ad valorem taxes on the Jeep Wrangler within ten (10) days from the entry of this Order.

6. The Lump Sum Judgment awarded to the Petitioner herein shall bear interest at the statutory

NOT ORIGINAL

**DOCUMENT**

12/01/2023 03:39:59

**PM**

judgment rate in Kentucky from the date of the entry of this Judgment.

82094

July 24, 2023

**TERRI KING SCHOBORG**
**KENTON COUNTY FAMILY COURT**

Copies to:

Jeffrey O. Casazza, Esq., Attorney for the Respondent

Jacqueline S. Sawyers, Esq., Attorney for the Petitioner

14

CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2025, a true and correct copy of the Objection to Claim
was served via United States Mail, first-class, postage fully prepaid, upon the following
parties:

Wayne Ellison
436 General Drive
Fort Wright, KY 41011

Jacqueline S. Sawyers, Attorney at Law
2216 Dixie Highway
Fort Mitchell, KY 41017

Shur Law Co LPA
4555 Lake Forest Dr. Ste. 650
Cincinnati, OH 45242

Office of the U.S. Trustee
550 Main Street, Suite 4-812
Cincinnati, OH 45202

Margaret A. Burks, Chapter 13 Trustee
600 Vine Street, Suite 2200
Cincinnati, OH 45202

Chastity Ellison

945 Delaware Way #5213

Cincinnati, OH 45245